(67 N. W. Rep. 597.)

---

### THE STATE OF NORTH DAKOTA *vs.* HERBERT ROOT.

Opinion filed June 3rd, 1896.

#### Contemptuous Language Concerning Judge—When Not Contempt.

> Where language which is abusive and defamatory in character is used by an attorney at law, and applied to a Judge of the District Court in which the attorney is licensed to practice, and such language reflects in severe terms upon the official action of such judge with respect to cases then pending in said court, and also reflects upon the private character of said judge, but such language is not uttered in the courthouse, nor in the immediate view and presence of the court or any of its branches, nor uttered within the sight of hearing of the judge, but is spoken in the stores and in the streets and public places of the city where court is being held, *held*, that such language does not constitute the offense of contempt of court.

#### Disbarment.

> Whether such language furnishes ground for disbarment proceedings not decided.

### Affidavit for Contempt—When Insufficient.

An affidavit attempting to charge a contempt of court committed by using offensive language respecting the presiding judge of said court, but which failed to allege that such language was spoken in the immediate view and presence of the court, *held*, insufficient, in substance, to charge the crime of contempt, either at common law or under the statute.

### Crimininal Contempt in Presence of Judge.

Where a criminal contempt of court occurs in open court, and within the personal knowledge and observation of the presiding judge, it can be punished, not only summarily, but without the use of either pleadings or evidence, other than the evidence of the judge's senses.   Rev. Codes, § § 5932, 5933, 5935.

### Affidavit Charging Criminal Contempt—How Construed.

Where an affidavit in a summary proceeding is filed charging a criminal contempt, such affidavit will be tested by the rules of criminal pleading which are applicable to indictments and informations; and this rule obtains whether the prosecution is begun under the statute or not.

### Summary Punishment for Contempt.

The statute governing summary criminal prosecutions for contempt of court is designed for such cases only, and is wholly independent and different from the disbarment proceedings authorized by the statute.   See Rev. Codes, § § 433, 434, 5935, and following sections.

### Trial for Contempt—Disbarment—Irregular Procedure.

Where appellant, upon a series of affidavits, was charged with using language which it was claimed constituted a criminal contempt of court, and, under Rev. Codes, § 5936, he was cited before the District Court by an order to show cause, not only why he should not be punished as for a contempt of court, but also why he should not be disbarred from practicing law as an attorney in said court; and where, under Art. 3, Ch. 34, Rev. Codes, the appellant was tried as and for contempt of court, and not otherwise tried, and found guilty of such contempt, and was sentenced to suffer the maximum penalties prescribed by section 5933; and in the same judgment it was adjudged that appellant be suspended from practicing law in said court indefinitely, and "until the further order of the court,"—*held* such proceedings, including the order to show cause, sentence, and judgment, were irregular, without authority of law, and highly prejudicial to the accused.

### Denial of Substantial Rights.

Where appellant, on such order to show cause, came into court, and, before pleading to the facts, "attempted to except to the jurisdiction" of the trial court, but was not permitted to do so, but was required by the express mandate of the court to plead at once to the facts, by admitting or denying the facts set out in such affidavits (see section 5942,) *held* prejudicial error.

### Right to Preliminary Motions in Appellate Court, When Denied in Court Below.

*Held*, further, that inasmuch as appellant was compelled at once, on coming before the trial court, to answer as to the facts, he will be entitled in this court to receive the benefit of all preliminary motions which he could have properly made in the court below if the right to do so had been in fact accorded to him in that court.

### Due Process of Law.

*Held*, further, that the fundamental errors in this proceeding could have been reached by a preliminary motion to quash, despite the fact that the statute regulating contempt proceedings does not in terms authorize such motion or any preliminary motion. The right to attack a criminal charge at the outset for insufficiency is fundamental, and to deny it to the accused is to deny him "due process of law."

### Attorney Cannot be Disbarred in Summary Proceeding.

Certain contempts of court, when committed by an attorney, will furnish grounds for his suspension or disbarment from practice; but an attorney cannot be lawfully suspended or disbarred as a punishment inflicted in a summary and *quasi* criminal proceeding instituted and conducted in accordance with the statute governing prosecutions for the offense of contempt of court.

### Disbarment—Statutory Trial.

Disbarment proceedings are governed by special statutory provisions; and, unless an attorney waives his rights, he cannot be lawfully disbarred or suspended from practice until he has been accorded a trial under the safeguards of this statute.

### Insults and Menaces of Judge Out of Court When Cause for Suspension of an Attorney.

Professional misconduct which falls short of being a contempt of court may yet furnish grounds for the revocation of an attorney's license in a proceeding brought expressly for that purpose. Threats of assault made directly and personally to the judge when out of court, but on account of his official action, and insults and menaces offered to the judge directly and personally out of court, but on account of the judge's official action, will afford a basis for proceedings to disbar an attorney. *People* v. *Green*, (Colo.) 3 Pac. 65; *Beene* v. *State*, 22 Ark. 149; *People* v. *Green*, 9 Colo. 506, 13 Pac. 514; *Ex parte Bradley*, 7 Wall. 364.

Appeal from District Court, Barnes County; *Rose, J.*

Herbert Root was convicted of contempt of court, and suspended from practicing as an attorney at law, and appeals.

Reversed.

*Newman, Spalding & Phelps,* and *Herbert Root,* in *pro. per.* for appellant.

Contempt of court is a criminal offense, and a proceeding to subject a defendant to the penalties fixed by law for contempt of court is a criminal action. Sections 5159, 7746, Rev. Codes; *State v. Markuson*, 64 N. W. Rep. 934; *Fisher v. Hayes*, 6 Fed. Rep. 63; *Durant v. Supervisors*, 1 Woolworth, 377; *Ex parte Kearney*, 7 Wheat, 38; *In re Mulle*, 7 Blatchf. 23. All steps taken to bring the defendant to trial must be taken with the technical exactness required in other criminal actions. Rapalje on Contempts, 174; *Bates Case*, 55 N. H. 325; *Ex parte Kilgour*, 3 Tex. App. 247; *U. S. v. Caldwell*, 2 Dall. 333; *Potter v. Low*, 16 How. Pr. 549; *Cooley v. State*, 65 N. W. Rep. 799. The prosecution must be based upon an indictment or information. Sec. 8, Art. 1, Const; 20 Am. L. Reg. 149; *In re Pollard*, 2 L. R. A. 106; *State v. Learned*, 47 Me. 426. An information or affidavit as a basis for contempt proceedings must state all the facts necessary to give the court jurisdiction to proceed for contempt. *State v. Markuson*, 5 N. D. 147; *State v. Sweetland*, 54 N. W. Rep. 415; *Batchelder v. Moore*, 42 Cal. 412; *Stewart v. State*, 39 N. E. Rep. 508. The affidavits in this case do not allege that the acts complained of were committed in the immediate view and presence of the court. Section 6402, Comp. Laws; *Jackson v. State*, 21 Tex. 668; *Neal v. State*, 9 Ark. 259; 3 Am. and Eng. Enc. L. 785; *Ex parte O'Brien*, 30 S. W. Rep. 158. If the language is not *per se* contemptuous the affidavit must show in what way it is contemptuous. *In re Wooley*, 11 Bush. 95 and 110; *People v. Freer*, 1 Caines, 484; 20 Am. L. Reg. 156; *Rosewater v. State*, 66 N. W. Rep. 640. Upon the filing by defendant of his denial of the facts charged as contempt, the court erred in calling witnesses to disprove his denial. 3 Am. and Eng. Enc. L. 793; *U. S. v. Dodge*, 2 Gall. 313; *Buck v. Buck*, 60 Ill. 105; *State v. Earl*, 41 Ind. 464; *Jackson v. Smith*, 5 Johns. 117; 20 Am. L. Reg. 150.

*Herman Winterer, State's Atty*, and *John F. Cowan, Atty Gen'l*, for the state.

The power to punish for contempts is inherent in courts of

record. The legislature can not regulate the exercise of this power unless by constitutional grant. *Arnold* v. *Com.,* 80 Ky. 300, 44 Am. Rep. 480; *Ex parte Robinson,* 19 Wall. 510; *In re Wolley,* 11 Bush. 95; *State* v. *Merrill,* 16 Ark. 403; *State* v. *Frew,* 24 W. Va. 416. The courts are at liberty to follow the principles of the common law in determining what constitutes a contempt. Both direct and constructive contempts were punishable at common law. *Middlebrook* v. *State,* 43 Conn. 257; *Peo.* v. *Wilson,* 64 Ill. 195; *Whitter* v. *State,* 36 Ind. 196; *State* v. *Dist. Court,* 62 N. W. Rep. 832.

WALLIN, C. J. The record in this case shows that Herman Winterer state's attorney for Barnes County, on December 28, 1895, presented to the District Court for said county (which was then in session, at Valley City) a number of affidavits purporting to contain charges against the appellant of various criminal contempts of court, committed by him at diverse times and places. Upon filing the affidavits, the District Court issued an order to show cause, as follows: "It is ordered by the court that Herbert Root, the party named in said affidavits, be, and is hereby, ordered to show cause before this court on the 2d day of January, at 10 o'clock A. M. of that day, why he should not be punished for contempt of court, and why he should not be debarred from practicing law in this county, in this court." The order, together with said affidavits, was served upon the appellant,—and, in response thereto, he appeared before the District Court; whereupon the following proceedings were had: "On January 2, 1896, this case was called for trial. The defendant, Herbert Root, being present in court, attempted to except to the jurisdiction of the court, but was refused permission to do so until the following proceedings were had: 'Court: Mr. Root, do you admit the facts in the affidavits served upon you? Mr. Root: I do not, sir.' The state's attorney is now ordered to file interrogatories in accordance with section 5942 of the Revised Codes of 1895, specifying the facts and circumstances of the offenses charged. Thereupon the interrogatories were duly filed." For the purposes of this

opinion, it will be unnecessary to set out the interrogatories at length. It is enough to say that they consist of pointed questions, requiring specific answers, touching the truth of the several charges as contained in said affidavits. Before answering the interrogatories, the record shows that the accused filed with the clerk, and read to the court, a motion to vacate the order to show cause. The ruling was as follows: "Motion overruled by the court, the defendant not being permitted to present any argument or explanation as to said motion; whereupon the following proceedings were had: 'Mr. Root: You will not hear any law on this? Court: No; I don't want to hear any law.'" Upon the following day (January 3d,) the defendant filed his answer to the interrogatories. Upon the issues thus joined, a trial was had, at which the prosecution called a number of witnesses, who were sworn and examined touching the subject matter of the various charges set out in the affidavits; whereupon the court, after filing findings of fact, entered judgment against the defendant, as follows: "I do hereby adjudge and consider that the defendant is guilty of contempt against this court, in this: that he has used language respecting this court in the court room, and in the presence of the court, respecting cases pending for trial in this court at the present term, such as to impair the respect due to its authority, and thereby directly tending to interrupt its proceedings, and whereby the administration of justice has been and is brought into disrepute, and the court disgraced; that the defendant has used such language aforesaid concerning this court, and respecting cases pending in this court, at the last term of the court, being the June term, 1895, of this court, in Barnes County, North Dakota, as did impair the respect due to this court and to its authority, and such as to bring the administration of this court into disrepute, and to disgrace this court; that the language aforesaid, and the conduct of the defendant as aforesaid, has been such that he is not a fit and proper person to longer practice law at this bar, until further order by this court. And I hereby adjudge and direct that the defendant be confined in the county

jail of Barnes County, North Dakota, for a period of thirty (30) days, commencing at noon of this 4th day of January, A. D. 1896, and that he pay a fine of two hundred ($200) dollars to the clerk of this court; that in case of default made by the defendant of the payment of this fine, that he be committed to the county jail of Barnes County, North Dakota, until such fine is paid, or for a period not exceeding thirty (30) days; that defendant's imprisonment for nonpayment of said fine shall commence at the expiration of the first term or period of the defendant's imprisonment herein mentioned; and that defendant be suspended from further practicing law in this court until the further order of this court; and that a commitment be issued to carry this judgment into effect. January 4, 1896." The accused appeals to this court from said judgment, and the record sent up embraces a statement of the case, with the evidence and procedure had in the trial court.

Considering the record before us as a whole, its most striking feature lies in the fact that it attempts to fuse and mass together in one proceeding two distinct special proceedings, which are wholly independent of each other, not only with respect to the results which each is designed to accomplish, but with respect as well to the practice and procedure laid down in the statute for the government of each respectively. A proceeding for the punishment of a criminal contempt of court, whether committed in *facie curiæ*, or committed out of the view and presence of the court, is a summary proceeding of a *quasi* criminal character, in which the contemner may be punished criminally by both fine and imprisonment; while the proceeding to suspend or revoke an attorney's license, as laid down in the Code, while it is special in its character, is neither criminal nor *quasi* criminal, either in its procedure or in its consequences. The important differences in the remedies will be seen at a glance by reading and comparing the two statutes. See Rev. Codes, § 5932, *et seq.*, regulating contempts, and sections 432-437, regulating the proceeding to revoke an attorney's license. It will be noticed that, in a

disbarment proceeding, the accused may elect whether he will demur or plead to the accusation brought against him; and, if he pleads, he is not hampered by statutory requirements compelling him to respond categorically to interrogatories framed by the prosecution, and which, peradventure, may require him to furnish damaging evidence against himself. Section 435 reads: "To the accusation he may plead or demur, and the issue joined thereon shall in all cases be tried by the court; all the evidence being reduced to writing, filed and preserved." The only judgment which can follow is a suspension or revocation of the attorney's license. An appeal will remove the whole case to this court, including the evidence, without the necessity of settling a bill or statement of the case. *Id.*, § 437. Turning to the statute regulating procedure in summary contempt cases, we shall at once discover a vitally different method of procedure, and one followed by results wholly dissimilar. Where the contempt is committed while the court is sitting, and in its immediate view and presence, no pleadings are essential, and none are required,—in cases where the facts constituting the contempt are within the personal cognizance of the presiding judge. In such cases there are no pleadings required, because there are no issues to be tried. All that is requisite to a complete record in such cases is an order of the court "stating the facts which constitute the offense, and reciting that the same occurred in such immediate view and presence, and plainly and specifically prescribing the punishment to be inflicted therefor." Rev. Codes, § 5935. This section epitomizes the settled common-law practice also. Rap. Contempts, § 93, and cases cited; 4 Enc. Pl. & Prac. p. 775, and note 4. See, also, 5 Cr. Law Mag. p. 484, and cases cited in notes.

In the case at bar, as has been seen, the trial court did not proceed upon the theory that the contemptuous language and behavior charged were committed within the sight or hearing of the presidiug Judge of the District Court. The proceeding had in the court below is only adapted to a case where the offensive behavior did not occur within the judge's personal observation.

The judgment of conviction follows certain findings of fact made and filed with the clerk, and which findings are based upon evidence brought out at a trial of the issues formed by the pleadings. The judgment is based upon such findings. It recites that, "upon the original affidavits, the answer, and the subsequent proofs offered and made by the state's attorney, the court finds that the defendant did use contemptuous languages," etc. The record therefore precludes the idea that the conviction resulted from any contempt of court occurring in the sight or hearing of the judge. It has been suggested that the behavior of the accused upon the trial of this case below was positively contemptuous; and that such behavior was exhibited not only technically, within the view and presence of the court while sitting, but actually in the face and presence of the trial judge; and that the same was of so fragrant a character that it would justify the infliction of criminal penalties as and for a contempt of court. If it were conceded that the accused did commit such contempts, we cannot see how the fact becomes pertinent in this court, and upon this record. It is manifest that this court can consider no charges against the accused other than those appearing of record, and upon which it affirmatively appears that the accused was tried and convicted. Where, however, as in the case at bar, the fact of the commission of the offense is not within the personal observation of the judicial officer presiding over the court, it becomes necessary to bring the facts before the court by a formal accusation. This is done at common law and under the statute by an affidavit. 4 Enc. Pl. & Prac. 776, and notes. Where this course is pursued, the affidavit at once assumes great importance, as it is not only the foundation for issuing the order to show cause (Rev. Codes, § 5936,) but also constitutes—and this is its most important office—the accusation upon which the accused is to be tried for a criminal offense. Under the modern authorities, at least, the sufficiency of such accusation is to be tested by the rules governing the framing of indictments and informations. All the material facts and essential ingredients of the offense are required to be set out by

distinct and positive averments; nor can any essential allegation be supplied by implication. *Batchelder* v. *Moore*, 42 Cal. 412; *Young* v. *Cannon*, 2 Utah, 560; *McConnell* v. *State*, 46 Ind. 298; *Stewart* v. *State*, (Ind. Sup.) 39 N. E. 508. See 5 Cr. Law Mag. 487, and cases cited in the notes. Section 5942, Rev. Codes, directs that, when the accused appears upon "an order to show cause the court or judge must, unless the accused admits the offense charged, cause interrogatories to be filed, specifying the facts and circumstances of the offense charged against him. The accused must make written answer thereto under oath." The proofs may consist of either affidavits or other proofs, but the statute contains no provision requiring the preservation of the evidence, as is done in the case of disbarment proceedings; and if the accused appeals, and desires a review of the evidence in the Supreme Court, a statement of the case, embracing the formalities prescribed by section 5466, becomes indispensable. This feature also, as has been seen, is not found in cases of appeal under the statute governing disbarment proceedings. It will be further noticed that no demurrer is mentioned in connection with a contempt proceeding, while, on the other hand, that form of pleading is expressly allowed in cases arising under the other statute.

This cursory examination of the two statutory proceedings we have been considering brings into view the very important practical differences which exist in their procedure, and particularly with reference to the various defensive measures which the accused may resort to under each respectively. In the case at bar, we have seen that the accused, as soon as he appeared in court in obedience to the order to show cause, and before pleading, "attempted to except to the jurisdiction of the court, but was refused permission to do so until the following proceedings were had: 'Mr. Root, do you admit the facts in the affidavit served upon you? Mr. Root: I do not sir. Court: The state's attorney is now ordered to file interrogatories in accordance with section 5942 of the Revised Codes of 1895.'" The interrogatories were then promptly filed. The facts will call for a ruling upon a point

of practice arising under the proceeding for the punishment of contempts of court which has recently come into operation by the adoption of the Revised Codes. The point can be stated by a question: Can the accused, after being cited before the court by an order to show cause, based on an affidavit, be compelled forthwith to enter a plea to the facts set out in the affidavit, *i. e.* be compelled to admit or deny the offense, as provided in section 5942, without being permitted to make any preliminary attack by motion upon the regularity or sufficiency of the proceeding brought against him? The statute makes no reference in terms to any preliminary motion, but we are clearly of the opinion that elementary principles of procedure demand that such motions should be allowed before the accused is called upon to frame an issue of fact. If there is no valid criminal charge to be investigated by the court, or if the court, for any reason, is irregular in its procedure, or without jurisdiction or lawful authority to hear and determine the case, it is certainly true that the accused cannot, under established principles of the law, be forced into an investigation of questions of fact. In civil actions and in criminal actions proper, the sufficiency of a complaint or indictment can be raised by a demurrer; and, in special and summary proceedings, similar questions are commonly raised by a motion to quash or other preliminary motions. That this is the practice in all special proceedings is elementary. It must, in fact, follow necessarily from the established doctrine, that the accusation in a criminal contempt case is required to be sufficient, in substance, that the accused shall be permitted to challenge the sufficiency of the charge against him in matters of law, before being compelled to answer to matters of fact. One element essential to a conviction upon such charge would be the jurisdiction of the court which assumes to adjudicate upon the case; another, that the offense is well pleaded; another, that the facts charged are such as, under the law, would constitute a contempt of court; and many others might be mentioned. If the written accusation which is the basis

of the charge is defective either in form or substance, we know of no means other than by motion whereby the defect can be brought to the attention of the court entertaining the case. Certainly, the Code makes no provision, in terms, for raising such questions, by motion or otherwise. It is clear to our minds, nevertheless, that the accused should not be arbitrarily compelled to join issue upon the facts without first giving him an opportunity to be heard by motion, whether such motion is leveled at matters of substance or at mere irregularities of procedure. Applying these well settled principles and rules of practice to the facts as they appear of record in this case, we shall be compelled to rule that the court below erred fundamentally, to the prejudice of the accused, in denying him the right to attack the proceedings against him by a preliminary motion. The accused attempted, before doing anything else, to challenge the jurisdiction of the court below, by an exception to such jurisdiction. He was not allowed to attack the proceedings at that stage, but was compelled, by a mandatory ruling of the court, to move forward to a later stage, and plead to the facts. He was required to say and declare at once whether he confessed the facts set out in the affidavits. The record is silent as to the particular ground or reason which the accused would have presented to the court as the basis for his attempt to challenge the jurisdiction. The groundwork of the exception, whether of fact or law, is left to conjecture. We only know that he "attempted to except to the jurisdiction of the court, but was refused permission to do so until the following proceedings were had," viz. until he pleaded to the facts set out in the affidavits. In our opinion, it is not at all important to inquire whether the groundwork of the exception to the jurisdiction of the trial court was or could have been valid in law. The accused was confronted by a very serious charge, one branch of which was attended by criminal penalties, and the other with consequences of a disastrous character. In such a dilemma, the accused cannot be restricted to valid objections to the proceedings brought against him. It was proper to except to

the jurisdiction then and there, and do so by a motion; and in such a motion the grounds thereof need not be specified at all. The court must at all times be prepared to vindicate its own authority to proceed in a case. In fact, the point of jurisdiction could be raised for the first time in this court. Moreover, we think that it is our duty, under the circumstances of this case, to give the accused the benefit of any motion, whether made or not, which might, under good practice, have been interposed by him before pleading to the facts.

The right to be heard, at least to the extent of presenting objections, is fundamental, and is, we think, of the very essence of "due process of law." It follows that if the accused, before pleading to the facts, had a legal right under good practice, to interpose motions of a preliminary nature, which right was denied him in the trial court, he should in this court, at least, have the benefit of all such motions, the same as if they had been made. To deny the accused such right would be manifest injustice. True, the accused was allowed at a later stage, and after being compelled to plead to the facts, to except to the jurisdiction of the trial court, and also to move to vacate the order to show cause. The record set out above discloses what occurred when these motions were made. The accused was not permitted to argue his legal propositions, nor to cite law in support of either of said motions; and the record, upon the motion to vacate the order, is as follows: "Motion overruled by the court, the defendant not being permitted to present any argument or explanation as to said motion." It may be conceded that a court, in the exercise of its discretion, can deny to counsel the privilege of arguing questions of law or fact. Such privilege is liable to abuse, and can be controlled. But we have serious doubts whether a court can so restrict counsel as not to accord to him the right to "explain" a motion to the extent of stating its groundwork. But we refer to these later proceedings only to say that, in our opinion, they do not cure the fundamental error involved in denying the accused the right to interpose preliminary objections, before being called upon to answer as to the facts.

We will now briefly consider the record as it stood before the accused was required to plead to the facts. It consisted of five separate affidavits, made by five citizens of Barnes County, which affidavits embodied the charges against the accused, and also constituted the basis for the order to show cause. The offenses charged, or sought to be charged, in these affidavits, consisted of language attributed to the accused as being used by him, on divers occasions in the months of June, August, and December, in the year 1895, in the City of Valley City, and constituting in the aggregate some eight or nine distinct criminal offenses, if either were an offense, committed at different times and places, under varying circumstances. With the exception of one charge, which will be considered separately hereafter, all of the language as set out in the affidavits and attributed to the accused was spoken by him not only strictly out of the view and presence of the court while sitting, but away from the courthouse, and not in the presence or hearing of the presiding judge of said court. The charges are to the effect that the offensive language was uttered in the stores and in the streets and public places of Valley City. The accused, at the June term of the District Court, as well as at the December term, 1895, had been, and was when tried, actively engaged in the prosecution of a number of cases arising under the prohibitory liquor law. He seemed to be greatly displeased by the course which the court pursued with reference to such cases, and all the language set out in the affidavits had reference to such cases, and to the action of the court and judge with respect thereto. The language which the accused was charged with using was very abusive in character, and of a nature highly defamatory and slanderous. It reflected in terms of severity upon the presiding judge of the very court in which the accused was practicing as an attorney at law, and assailed the judge, not only on account of his offensive action in the liquor cases, but also attacked his private character as a citizen. We can scarcely conceive of any circumstances which could justify an attorney in the use of such language, even when out of court, and out of the

presence or hearing of the judge to whom it was applied. But the question before this court is whether the language we have thus far considered would constitute the crime of contempt of court. We are clear that it would not. No case is cited on the part of the state to support the contention, and, after a diligent quest, we have been unable to find any modern authority to sustain the prosecution upon this feature of 'the case. See, for general principles of contempt, *Neel* v. *State*, 9 Ark. 259.

If we are correct in this view, it must follow that the charges we have thus far considered would, upon a motion seasonably interposed, have been stricken from the case, and not further considered in prosecuting the criminal branch of this case.

The remaining charge is embraced in the affidavit of one Irgens, which was filed with the others, on December 28, 1895. It charges the appellant with using contemptuous language towards the presiding judge of said court during the term of the District Court then pending, but omits to state the particular date or time when the offensive words were spoken. We think this omission would be fatal in an information charging this offense. Irgens was a defendant in one of the liquor cases before the court at that time. After reciting that the Honorable Roderick Rose was presiding at the time, and that a motion had been made for a continuance of his case over the term, the affidavit proceeds as follows: "That said Herbert Root approached me in the court room, in the presence of various people, and stated to me in substance, and in the presence of various bystanders: 'You fellows are damned chumps for paying out your money for attorneys to defend you. The judge will look out for you. He knows what he is here for. He understands his business. He knows what he is elected for. You fellows don't need to fear.' That the said case wherein affiant was defendant was a case brought under the prohibition law of this state. That said Root had been actively engaged, as he claimed, as a special counsel for the purpose of prosecuting the liquor cases. That the said remarks of the said Root at the said time, by reason of the circumstances, clearly

conveyed the idea that the judge of the said court was using his official position to shield and protect and save from punishment persons who were prosecuted for violations of the prohibitory law of this state. That the said remarks were made in a tone and in a manner calculated to cast reflections upon the presiding judge, and to create the impression that the judge was corrupt, and did reflect upon the honor and dignity of the court. That the cases referred to by the said Root in the presence of affiant and others were then and there pending in said court. The said remarks were made while the court was in session, and in the court room. That jurymen and citizens were sitting around and about within hearing distance of said remarks." It will be noticed that the accused is charged with using the contemptuous words in the court room, and while the court was in session, and in the presence of divers persons and jurors, "who were sitting around and about within hearing distance." But it is not charged that the words were spoken either in the view and presence of the court while sitting, or in the sight or hearing of the judge presiding over said court; nor is the claim made even in argument that the judge personally heard the words, and there is much in the case tending to show that he did not. But the important fact is that no such averment is found in the accusation. To our minds, the omitted allegations are vital to the charge. The fact that the obnoxious words were spoken in the court room is not important, unless coupled with the fact that, at the time they were spoken, the court was sitting and discharging judicial functions, and words were spoken in the immediate view and presence of the court, and were calculated to interrupt its proceedings or impair its authority. No such charge is made, and the fact that it is charged only that the words were spoken in the presence of jurors and citizens is to our minds significant. However willing we might be to do so, we cannot, under the rules governing the statement of criminal offenses, indulge presumptions in aid of charges, and in this case infer that the offense was committed while the court was actually sitting, and in its immediate view

and presence, when no such allegations appear in the affidavit. It is charged that the words were spoken while the court was in "session." But the expression "in session" is commonly used not only to express the idea that the judge is sitting on the bench and engaged in the discharge of official functions; the same term is quite as often employed to convey the idea that court has convened for a term, and has not yet adjourned for the term. But if the terms "sitting" and "session," as applied to courts, were precisely equivalent and interchangeable terms, the affidavit is still open to the criticism that it is not alleged that the language was used in the immediate view and presence of the court. We regard this averment essential in this offense, whether the prosecution is under the statute or not. It is obvious that language, however offensive, may be spoken even while the court is in session, and in the court room, in such a way that it would not constitute an offense committed in the immediate view and presence of the court, and tending to interrupt its proceedings.

If we are correct in our conclusion as to the Irgens affidavit, it will follow that the exception to the jurisdiction of the District Court to proceed to the trial of the contempt feature of this case was well grounded and valid. The court would certainly be without jurisdiction, in the sense of being without lawful authority to proceed with the contempt branch of the case, if there was no valid charge of contempt on file; and we hold that there was none. To prevent being misunderstood, we say expressly that it is our opinion that where it is charged that the offensive behavior was exhibited while the court was sitting, and in its immediate view and presence, the charge can be made out by proof without showing that the offensive act took place within the sight or hearing of the judge. The cases cited next below will illustrate what is meant by the expression "immediate view and presence of the judge." See *People* v. *Barrett*, 9 N. Y. Supp. 321, 56 Hun. 351, affirmed 121 N. Y. 678, 24 N. E. 1095; *In re Griffin*, City Ct. (N. Y.) 1 N. Y. Supp. 7. Under the rule applied in these cases, a contempt is established where the behavior is exhibited while

the court is sitting in the discharge of judicial functions, if it is committed in the presence of some branch of the court when so engaged.

We are also clear that it was fundamentally erroneous and prejudicial to the appellant to require him to plead to the facts at the threshold of the case, and without allowing him to raise the preliminary objection that the proceeding brought against him was irregular and void, because it was unanthorized by any law or practice. It would have been proper practice to test the validity of the compound proceedings attempted to be brought against the accused by a preliminary motion to quash the same, and, if that had been overruled, to follow it by a motion requiring the prosecution to elect and declare at the outset upon which branch of the case it would first proceed. It cannot be overlooked that the appellant was deeply concerned in these preliminary questions. He had been cited into court for a double purpose, and was threatened by twofold penalties. He was required to show cause why, on account of the charges on file against him, he should not be punished criminally, and also why he should not suffer even more seriously by a disbarment as an attorney. Confronted by such a dilemma, he was entitled to such protection, at least, as the statute in terms affords. He should have been accorded the right to demur to the accusation in so far as the same was sought to be used as a basis for the revocation of his attorney's license; and in that branch of the case it was seriously prejudicial to compel him to answer interrogatories under oath touching the facts bearing upon the charges against him.

It is in our opinion, needless to further discuss the facts in the record. Obviously, the whole proceeding was not only unprecedented, but was in the highest degree prejudicial to the legal rights of the accused. The objections to this proceeding cannot be answered by saying that the proceedings at the trial which were actually had were those only which may be taken in a contempt case. This would not be true either in fact or in legal

effect. The order to show cause required the accused to show cause why he should not be disbarred from practice as an attorney; and, pursuant thereto, the learned trial court, after imposing the highest penalty allowed by the statute for a criminal contempt of court, proceeded, in the same judgment to suspend the accused from practicing as an attorney in said court for an indefinite period, *i. e.* "until the further order of the court." It thus appears that, from the inception to the close of the proceedings in the District Court, the vitally important matter of the appellant's disbarment from practice was an ever present factor; and the further fact stands out prominently that the statute regulating disbarments, and surrounding an attorney with many safeguards not available in contempt proceedings, was wholly ignored. It is manifest that the court below proceeded to try and doubly punish the accused upon a wholly mistaken view of the law, namely, that when an attorney charged with a criminal contempt, and tried on such charge, and no other, is found guilty, he may at once be suspended or disbarred from practice. It is doubtless true that certain gross contempts of court, when done by an attorney, will furnish ground for prosecution for misbehavior in office, punishable by disbarment; but in all such cases the procedure in the statute must be observed. In this state there is a statute framed expressly to regulate proceedings against attorneys for disciplinary purposes, and under which an attorney's license may be. suspended or revoked. Rev. Codes, § 432. See, also, *State* v. *Start,* 7 Iowa, 499; *Ex parte Smith*, 28 Ind. 47; *Withers* v. *State*, 36 Ala. 252; *Ex parte Bradley*, 7 Wall. 364. Disrespectful language used in court by counsel is at once a criminal offense, punishable summarily, and a ground for disbarment for official misconduct. 3 Am. and Eng. Enc. Law, 785; *Holman* v. *State*, 105 Ind. 513, 5 N. E. 556; *Sharon* v. *Hill*, 24 Fed. 726; 1 Am. and Eng. Enc. Law, pp. 945, 946, and notes. Insulting communications, made directly and personally to the judge, respecting his action in a pending case, are punishable as a contempt. *In re Pryor*, 18 Kan. 72. Such conduct is also

ground of disbarment. *People* v. *Green*, (Colo.) 3 Pac. 65, also 374. Conduct which is not criminal may, nevertheless, be grounds for disbarment. *Beene* v. *State*, 22 Ark. 149; Weeks, Attys. at Law, § § 80, 81; *People* v. *Green*, 9 Colo. 506, 13 Pac. 514; *Id.*, 7 Colo. 237, 3 Pac. 65, 374; *Cramer* v. *Tittel*, (Cal.) 21 Pac. 750.

But, from our views of the law as already set forth, it becomes necessary to reverse the judgment of the trial court for irregularities of procedure highly prejudicial to the appellant, and this would be our holding in this case irrespective of the question as to the sufficiency of the affidavits to charge a criminal offense. We cannot, however, conclude this opinion without an allusion to the fact that this record furnishes ample evidence that the appellant has repeatedly assailed the official rulings of the Honorable Roderick Rose, presiding judge, of said court, with respect to the liquor actions pending in his court, and has repeatedly assailed both his official and private character. The persistence by the accused in the use of abusive and vituperative language applied to the judge, although in his absence, is, in our judgment, entirely inconsistent with the obligation of an attorney "to maintain the respect due to the courts of justice and judicial officers." Rev. Codes, § 427. Nor do we wish to be understood as holding in this case that the language charged would not, in a proper proceeding, afford sufficient ground for the disbarment of the accused, under Subd. 3, § 433, Rev. Codes. Upon this question we are not called upon now to pass, nor shall we here intimate our views upon it. The questions in the case supposed, should such a case ever arise, would involve special investigation, and the consideration of the constitutional rights of all citizens, attorneys as well as others, to criticise the action of public officials in a proper manner, and within certain legal limitations of that right, and would further and especially necessitate the inquiry as the rights of attorneys to indulge in too severe strictures upon the official conduct of judges presiding over courts in which attorneys are licensed to practice. These inquiries cannot be further prosecuted here; but on this aspect of the question,

see *People* v. *Green*, (Colo.) 3 Pac. 65; *Beene* v. *State*, 22 Ark. 149; *People* v. *Green*, 9 Colo. 506, 13 Pac. 514; *Ex parte Bradley*, 7 Wall. 364.

The judgment will be reversed. All the judges concurring.