STATE of North Dakota, Plaintiff
and Appellee,

v.

Julie GOELLER, Defendant
and Appellant.

STATE of North Dakota, Plaintiff
and Appellee,

v.

Debra E. ANDERSON, Defendant
and Appellant.

Cr. Nos. 625, 626.

Supreme Court of North Dakota.

Feb. 17, 1978.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for defendants and appellants; argued by Irvin B. Nodland, Bismarck.

John T. Paulson, State's Atty., Valley City, for plaintiff and appellee.

PEDERSON, Justice.

Julie Ann Goeller and Debra Elaine Anderson separately appealed from a "Judgment and Sentence" of contempt of court.

Goeller and Anderson were present in the Barnes County Court of Increased Jurisdiction for an arraignment on a charge of possession of a controlled substance. Section 19–03.1–23(3), North Dakota Century Code. No record was made of the proceedings, other than two documents executed by the judge who presided at the arraignment, which were each labeled "Summary Contempt Findings & Order."

The significant part of these two orders states:

"During this arraignment proceeding the Court saw by its personal observation giggling, laughing, and smirking by the Defendant and a co-defendant . . . . The Court by simply stopping, remaining silent, and looking directly at the Defendant was able to restore proper courtroom decorum. When the giggling, laughing, and smirking resumed, the Court stopped and directly said words to the effect that this is an important matter, you face a serious charge, now please pay attention. Again, proper courtroom decorum was restored. On the third occasion of giggling, laughing, and smirking, the Court found the Defendant, . . . to be in Summary Contempt; . . . ."

In the one document Goeller was identified as defendant and Anderson as the codefendant. In the other document, Anderson was identified as the defendant and Goeller was identified as codefendant. Otherwise, the pertinent provisions in the two orders are identical. Each defendant was ordered remanded to the custody of the sheriff of Barnes County for ten days and, after five days had expired, each of the orders was vacated.

A number of affidavits were filed by the defendants and by the State, pursuant to Rule 10(d), North Dakota Rules of Appellate Procedure. These affidavits do not supply any information needed by this Court in determining the issues before it.

■ During pendency of these appeals, the two appellants have taken steps seeking to have the appeals stayed and the matters remanded to the trial court for the purpose of obtaining evidentiary hearings, and for proceedings under the Uniform Post-Conviction Procedure Act, Ch. 29–32, NDCC. Appellants have assumed that these interim steps make it unnecessary to comply with the Rules of Appellate Procedure. No briefs on the merits of the appeals have been filed and no applications have been

made for extensions of time. See Rules 26 and 31, NDRAppP. We do have, however, the briefs of the parties on the interim motions, and have heard oral arguments which included arguments on the merits. We therefore decline to stay the appeal or to remand for further proceedings below. The merits of the appeals are properly before us.

■ The power of courts to summarily exercise powers of contempt has been long recognized. The United States Supreme Court, in *In re Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888), approved, in a contempt case, the infliction of instant punishment without charges, without plea, without issue, and without trial. This Court first commented on such summary power in *State v. Root*, 5 N.D. 487, 67 N.W. 590 (1896). As recently as *Klein v. Snider*, 253 N.W.2d 425 (N.D.1977); *State v. Stokes*, 243 N.W.2d 372 (N.D.1976); *LePera v. Snider*, 240 N.W.2d 862 (N.D.1976); and *State v. Stokes*, 240 N.W.2d 867 (N.D.1976), we have recognized the propriety of summary punishment for direct contempts committed in the presence of the court. In *State v. Heath*, 177 N.W.2d 751 (N.D.1970), we said that "petty" contempts could be punished summarily.

■ Persons who perform offensive acts before a court may be instantly held guilty of contempt without violating constitutional rights. See *Knox v. Municipal Court of City of Des Moines*, 185 N.W.2d 705 (Iowa 1971).

Rule 42(a), NDRCrimP, which superseded § 27–10–06, NDCC, as to criminal contempt, applies to this case. It states:

"A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

■ Where the contempt is direct, the court may invoke punishment in a summary manner. Since the court, in such a situation, has personal knowledge of the contumacious conduct, it may invoke its sanction without prior notice, written charges, plea, issue or trial. Further presentation of evidence is unnecessary and no record need be made. See *Estate of Shlensky*, 49 Ill. App.3d 885, 7 Ill.Dec. 269, 275, 364 N.E.2d 430, 436 (1977). See also, Wright, Federal Practice and Procedure, Criminal § 708, Procedure for Summary Contempt. The California Court of Appeals, in *Rosenstock v. Municipal Court of Los Angeles*, 61 Cal. App.3d 1, 132 Cal.Rptr. 59, 61 (1976), said:

"Contempt committed in the immediate view and presence of the court, known as direct contempt, may be treated summarily. All that is required is that an order be made reciting the facts, adjudging the person guilty, and prescribing the punishment."

■ Courts have not in the past, nor do we now construe summary contempt power to be *carte blanche*. The power to impose summary punishment exists only where there is compelling reason for an immediate remedy and, where there is no such need, its use is inappropriate. See *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), and *United States v. Brannon*, 546 F.2d 1242 (5th Cir. 1977).

Justice Black's opinion in *Re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), pointed out circumstances wherein summary contempt proceedings provide a "narrow exception" to due process requirements. *Only* when the conduct is in open court and in the presence of the judge, when it disturbs the court's business, and when "immediate punishment is essential to prevent demoralization of the court's authority," can it be justified. See, also, *Cooke v. United States*, 267 U.S. 517, 539, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925), where the court said:

"The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice, and in maintaining the authority and dignity of the court, is most important and indispensable. But its exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions."

See, also, *Ciraolo v. Madigan*, 443 F.2d 314 (9th Cir. 1971).

Justice Douglas, in delivering the opinion of the Court in *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971), said:

"Justice must satisfy the appearance of justice."

The Supreme Court of California said, in *People ex rel. Field v. Turner*, 1 Cal. 152, 153 (1850), and has often repeated, that "the power to adjudicate a direct contempt is necessarily of an arbitrary nature, and should be used with great prudence and caution. A judge should bear in mind that he is engaged, not so much in vindicating his own character, as in promoting the respect due to the administration of the laws; and this consideration should induce him to receive as satisfactory any reasonable apology for an offender's conduct." See *Lyons v. Superior Court*, 43 Cal.2d 755, 278 P.2d 681, 685 (1955).

▮ In *State v. Stokes*, 240 N.W.2d at 871, *supra*, we said that contempt powers should not result in over-kill. We adhere to the principle that only "the least possible power adequate to the end proposed" should be used in contempt cases. *United States v. Wilson*, 421 U.S. at 319, 95 S.Ct. at 1808, *supra*. We referred to Part VII of the *ABA Project on Standards for Criminal Justice*, "Standards Relating to the Function of the Trial Judge," Approved Draft 1972. We also applied these standards in *LePera, supra*. Part VII provides:

"7.1 Inherent power of the court.

The court has the inherent power to punish any contempt in order to protect the rights of the defendant and the interests of the public by assuring that the administration of criminal justice shall not be thwarted. The trial judge has the power to cite and, if necessary, punish summarily anyone who, in his presence in open court, willfully obstructs the course of criminal proceedings.

"7.2 Admonition and warning.

No sanction other than censure should be imposed by the trial judge unless

(i) it is clear from the identity of the offender and the character of his acts that disruptive conduct was willfully contemptuous, or

(ii) the conduct warranting the sanction was preceded by a clear warning that the conduct is impermissible and that specified sanctions may be imposed for its repetition.

"7.3 Notice of intent to use contempt power; postponement of adjudication.

(a) The trial judge should, as soon as practicable after he is satisfied that courtroom misconduct requires contempt proceedings, inform the alleged offender of his intention to institute such proceedings.

(b) The trial judge should consider the advisability of deferring adjudication of contempt for courtroom misconduct of a defendant, an attorney or a witness until after the trial, and should defer such a proceeding unless prompt punishment is imperative.

"7.4 Notice of charges and opportunity to be heard.

Before imposing any punishment for criminal contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment.

"7.5 Referral to another judge.

The judge before whom courtroom misconduct occurs may impose appropriate sanctions, including punishment for contempt, but should refer the matter to another judge if his conduct was so integrated with the contempt that he contributed to it or was otherwise involved, or his objectivity can reasonably be questioned."

▮ Our evaluation of the contempt orders in these cases, even without applying these standards, leads us to conclude that the trial judge acted improvidently in imposing the harsh sentence. We readily acknowledge that "giggling, laughing, and smirking" can be disturbing to a judge and a reprimand would be entirely justified. The disrupting conduct was admonished by

the judge in these cases, as it should have been. There was, however, no clear warning as to the specific sanction to be imposed for the repetition of the conduct. Under the circumstances here, the sanction of ten days incarceration in the county jail was arbitrary, was not necessary to prevent demoralization of the court's authority, and does not satisfy the appearance of justice. It was clearly an "over-kill" and was apparently later recognized as such by the trial judge when he subsequently vacated one-half of the sentence.

We affirm the contempt conviction, but vacate the sentence and remand for sentencing by a judge to be appointed by the presiding judge of the First Judicial District. The resentencing may be based upon the summary contempt findings now in the record or upon such further hearing as determined necessary by the judge. No costs will be allowed on the appeal.

ERICKSTAD, C. J., and HATCH, VOGEL and SAND, JJ., concur.

HATCH, District Judge, sitting in place of PAULSON, J., disqualified.