BURDETTE G. LATIMER v. NATHANIEL L. BARMORE AND
F. H. HILL COMPANY.

*Contempt proceedings—Jurisdiction of court—Order of imprisonment.*

How. Stat. chap. 256, providing for " proceedings as for contempts
to enforce civil remedies, and to protect the rights of parties in
civil actions," is construed as follows:

   *a*—Such proceedings cannot be instituted on the petition of
a party upon whom process has not been served, and who has
not appeared and submitted himself to the jurisdiction of the
court.

   *b*—Such proceedings may be prosecuted although no party is
aggrieved by the misconduct for which the attachment is
issued, and, like proceedings as for criminal contempts, may
be instituted by the court upon its own motion, and without
the intervention of the party to the pending suit; citing *Langdon v. Wayne Circuit Judges*, 76 Mich. 358.

   *c*—A failure to file interrogatories, as required by How. Stat.
§ 7275, and to allow the party proceeded against an opportunity to produce his witnesses, is an irregularity calling for a
reversal of the final order adjudging him guilty of the contempt charged.

   *d*—Imprisonment can only be ordered, under How. Stat. §§
7279, 7280, until the fine is paid or the act or duty imposed
performed.

Appeal from Wayne. (Brevoort, J.) Argued May 15,
1890. Decided July 2, 1890.

Contempt proceedings under How. Stat. chap. 256.
Complainant appeals from order adjudging him guilty of
contempt, which is reversed. The facts are stated in the
opinion.

*Barbour & Rexford*, for complainant.

*Bowen, Douglas & Whiting*, for defendants.

CHAMPLIN, C. J. On November 13, 1889, Burdette G. Latimer filed his bill of complaint in the circuit court for the county of Wayne against Nathaniel L. Barmore and F. H. Hill Company (a corporation), praying that a bill of sale executed by Latimer to Barmore of certain horses might be decreed to be null and void, and for an injunction against defendants' proceeding further in a replevin suit which they had instituted against Latimer to recover possession of the horses, from proceeding to a foreclosure of said bill of sale, and from interfering with Latimer's possession of the horses, and from instituting any other suit or proceeding in an action at law for the recovery of the possession of said horses, or any of them, and for the appointment of a receiver pending the determination of Latimer's rights. This bill was verified by the oath of Latimer. On the same day it was presented to Hon. Henry N. Brevoort, who allowed an injunction *ex parte*, except as to further proceedings in the replevin suit mentioned in the bill of complaint. He also, on like *ex parte* application, appointed Girard O. Kenyon, of Detroit, receiver of the eight horses mentioned in the bill of complaint, on his executing a bond to the register in chancery in a penalty of $1,500, the property being represented to be worth $1,200. Kenyon filed his bond, took possession of the horses, which he found at Fenton, Genesee county, and brought them to Detroit.

On November 14, 1889, an order of court was made by the Honorable Henry N. Brevoort, directing the receiver not to deliver the horses to Burdette G. Latimer without order of the court, and that he do nothing further, and make no further expense, with reference to the horses, but to appear before the court on Friday, November 15, at 2 o'clock, and report to the court what he had done as such receiver, and where said horses were, and that he

retain possession of said horses until such time only. This order was *ex parte,* and made upon the court's own motion, and was not filed and entered until November 25, 1889. It appears from the answer of Girard O. Kenyon, hereinafter again referred to, that he appeared before the court in obedience to the order, and stated that the horses were at the stable of William Dinnee, on Lafayette avenue, and that said judge then and there approved of their being kept at said stable.

On November 18, on motion of defendants, by Bowen, Douglas & Whiting, their solicitors, appearing specially for that purpose, the court ordered that the injunction issued November 13 be dissolved, with costs against complainant; that the order appointing G. O. Kenyon receiver be set aside and held for naught; and that said receiver be and was ordered forthwith to return said horses and other property to said defendants or their agents, free and clear of any expenses or charges connected with their taking and keeping. It appears that Burdette G. Latimer and his solicitor, D. C. Rexford, were present in court when this order was made; that after it was announced they left the court-room, and when upon the street Rexford advised Burdette, as Rexford and Burdette both testify, that, as the order appointing the receiver was wholly set aside, he might go to the stables, and take the horses, which he claimed as his own property.

It further appears that upon November 21 the court made another order, and ordered that it be entered *nunc pro tunc* as of November 18, amending the order made that day with respect to the receiver, so that it should read as follows:

" It is also further ordered that G. O. Kenyon, the receiver herein, forthwith deliver the horses and other

property which have come into his possession to said defendants or their agents, free and clear of any expenses or charges connected with their taking or keeping."

On November 20, S. T. Douglas, in behalf of F. H. Hill Company, verified a petition, which he filed in said court, which, after setting forth a history of the proceedings to that time, contained the further statements following, namely:

"Petitioner further shows that, on the 15th of November, Girard O. Kenyon, the receiver, appeared before the court, and stated that said horses were in his possession, and were being stabled at the stable of William Dinnee, formerly known as 'Stanley's Livery Stable,' on Lafayette avenue.

"Petitioner further shows that on the 14th day of November, while the horses were in possession of said Kenyon, it demanded, through its attorneys, the immediate possession of said horses, and that Kenyon refused to deliver the same.

"Petitioner further shows that said receiver remained in the possession of said horses until November 18, pending the decision of this court on an application of said petitioner, dissolving an injunction heretofore granted by this court; that on November 18, at the opening of court, an order was made dissolving said injunction, and directing the said receiver to deliver to said petitioner, its agent or representatives, the horses above mentioned; that petitioner has made demand of said receiver for said horses, and said receiver now says that the horses have been stolen or taken from the stable where they were, and the said petitioner is informed by said receiver said horses were taken by Burdette G. Latimer, the complainant in this cause.

"Petitioner further shows that it has, through its attorneys, requested said receiver to obtain possession of said horses, and, if necessary, to bring a replevin suit for the same; but said receiver now refuses either to deliver said horses to petitioner, or to make any showing to this court as to the whereabouts of said horses, or to take any further steps in the matter.

"Petitioner states that its right, as the possessor and owner of the property above set forth in the bill of sale,

has been seriously affected by the disobedience of the order of this court, and by the neglect and refusal on the part of the receiver, and also on the part of said Latimer, to respect the order of this court; that said petitioner is informed and believes that said Latimer, on the 18th day of November, removed said horses from the barn of said William Dinnee, and that said horses are now in the possession of, and at the stable of, Closs & Son, on Duffield street, and that said Closs claims that he bought said horses from said Latimer since the order of the court above referred to, and, although petitioner has demanded the possession of the horses of said Closs, Closs refuses to deliver the same to petitioner.

"Petitioner further states that he believes said Latimer and said Kenyon are acting under the direction of Dwight C. Rexford, their attorney, in this matter, and such advice is calculated to be in contempt of the order of this court, with which said Rexford is perfectly familiar, and that the actions of said Latimer, Closs & Son, Kenyon, and Rexford are an intentional violation of the order of this court, and are in contempt of said order.

"Petitioner therefore asks that a rule be entered in this cause, requiring Burdette G. Latimer, Closs & Son, Girard O. Kenyon, Dwight C. Rexford, and each and all of them, to show cause why each and all of them should not be punished for the contempt, and the misconduct alleged to have been done and committed by them, or either of them, in contempt of this court, and prejudicial to the rights of said petitioner in this cause, so that the possession of said property may be given to petitioner, and all or either of said parties ordered to return said horses to the possession of petitioner.

"This petition is based also upon the affidavits of James P. Britt, Allison L. Hitchcock, and Cornelius W. Britt hereto attached."

The affidavit of James P. Britt shows that he inquired at the stable of Dinnee, of the foreman in charge, and was informed that on the morning of November 18, about 9 o'clock, Burdette G. Latimer came to the stable with two men, and took the horses away.

Allison L. Hitchcock's affidavit showed that he had interviewed George H. Closs, of the firm of Closs & Son,

and Closs informed him that he purchased the horses in question from Latimer on November 18 for $1,200, and that they were delivered at the stables of Closs & Son by Latimer's directions; that George H. Closs informed him that he knew of the controversy between the parties concerning the horses, and understood that Barmore and F. H. Hill Company were endeavoring to defraud Latimer of the possession of the horses. Cornelius W. Britt's affidavit was identical with that of Hitchcock's.

Upon this showing the court, Hon. Henry N. Brevoort presiding, made the following order on November 20, 1889:

"It appearing to the court now here, from its own immediate view thereof, and also from the petition of the F. H. Hill Co., and the affidavits of James P. Britt, Cornelius W. Britt, and Allison L. Hitchcock, that said Burdette G. Latimer, Girard O. Kenyon, Sebilla Closs, doing business as Closs & Son, and Dwight C. Rexford, have disobeyed the order of this court, and have unlawfully interfered with the proceedings in this cause, and with the order of the court made herein, by which said interference the rights and remedies of the defendant in this cause are greatly impaired and prejudiced, as it is alleged, on motion of Bowen, Douglas & Whiting, solicitors for said defendant, the F. H. Hill Co., it is ordered that said Burdette G. Latimer, Girard O. Kenyon, Dwight C. Rexford, and Sebilla Closs, doing business as Closs & Son, appear and show cause before this court, on the 25th day of November next, at the opening of court on said day, why each and all of them should not be punished for the said alleged misconduct.

"And it is further ordered that a copy of this order be served upon the said Burdette G. Latimer, Girard O. Kenyon, Dwight C. Rexford, Sebilla Closs, doing business as Closs & Son, without delay, together with a copy of the affidavits, and the petition upon which the same is founded.

"HENRY N. BREVOORT,
"Circuit Judge."

Sworn answers were filed by the respondents. Burdette

G. Latimer sets up that he was the owner of the horses, and that F. H. Hill Company had no legal or equitable title thereto. Admits that he was in court on November 16, and heard the arguments relative to dissolving the injunction and removing the receiver; that he was present on November 18, and heard Judge Brevoort announce his decision, substantially as follows:

"That under the circumstances of the case he (said judge) thought that the injunction issued in this cause should be dissolved and the receiver removed, and that he therefore so ordered."

That the judge did not direct what disposition should be made of the horses, and, believing himself to be the owner, and that Kenyon had no further control over them, acting on the advice of Dwight C. Rexford, his solicitor, he went to the stable, and took them away, and sold them to Closs & Son, and since said sale they have been beyond his control.

Sebilla Closs in her answer says that she is a member of the firm of Closs & Son; admits Closs & Son recently purchased eight horses; that no demand was ever made upon her for possession of said horses, and she has never refused to deliver them to any one; that she never received any notice of any order or proceeding in said cause other than a copy of the order to show cause, and a copy of the petition on which the same is founded; that before being served with said order she was not informed that said cause was pending in said court, and had done nothing with any design of committing a contempt of, or offering any disrespect to, the court.

Girard O. Kenyon, in his answer, states the several orders appointing him receiver, and that he kept the horses at Dinnee's stable by the approval of the judge; that on November 18, 1889, he was informed by Judge Brevoort that the horses had been taken away from the

stable, which was the first he knew that they had been removed, and says they were taken away without his knowledge or consent; that he demanded possession of Closs & Son, and was refused.

Dwight C. Rexford, in his answer, denies that the petition states sufficient facts or reasons for granting an order on him to show cause; denies the right of the court to punish him on account of anything alleged or stated in the petition. He states that he was one of the solicitors of complainant, and has had the entire management of the cause to the present time; that no appearance has been entered by the defendants, or either of them, and no notice of appearance has been served on the solicitors for complainant, and that he finds no entry of record of any special or limited appearance, except so far as such appearance appears by the petition for said order to show cause, which was served on him on November 22, 1889; that he received no notice of the application for the said order mentioned in the petition purporting to have been made on November 14; that he was never served with a copy of said order, or any notice thereof, nor has he in any manner waived his right to notice; that he is informed and believes that said order was granted *ex parte* on the verbal application of Samuel T. Douglas, claiming to act as solicitor of said petitioner; that none of the proceedings or orders in the cause purporting to have been taken or made on behalf of said defendants, or either of them, have been had upon any notice whatever to complainant's solicitors, as he believes, except as stated in his answer. His answer proceeds as follows:

"This respondent further shows that on Saturday, the 16th day of November, 1889, in compliance with a verbal notice from his honor, Henry N. Brevoort, one of the judges of this court, he appeared in this court before the said judge; that thereupon the said Douglas was proceeding to argue that the injunction · issued in this cause

should be dissolved, and that the receiver appointed therein should be removed; that thereupon this respondent objected to the said Douglas being heard in the matter, on the grounds—

"1. That neither one of the said defendants had been served with process, or had appeared in this cause, by said Douglas or any one as solicitor.

"2. That no written motion had been made in the cause on behalf of said defendants, or either of them, and that no written notice of a motion in said cause had been served upon complainant's solicitors.

"Respondent further says that the said objections were then and there overruled by the said judge, and the said Douglas was allowed to proceed with his argument, to which this respondent replied; that, at the conclusion of said argument, the said judge announced that he would decide the matter on the following Monday morning, at which time this respondent was present in this court, at the opening thereof, and heard the said judge announce his decision and order in said matter, which was substantially as follows:

"That, under the circumstances of the case, he (said judge) thought that the injunction issued in said cause should be dissolved, and the receiver removed, and that he therefore so ordered.

"This respondent further says that the said judge, at the time above mentioned, did not direct what disposition should be made of said horses; that thereupon this respondent, believing that the said order would be formally entered, as above stated, that the said defendants were not entitled to be heard to the contrary, that said complainant was the owner of said horses, that said receiver had no further control over them, that defendants, through their attorneys, would at once undertake to renew their fraudulent possession of them, advised the said complainant to take possession of said horses; that, before this respondent was informed that an order had been formally entered, varying the terms of the said verbal order, he was informed by the said complainant that he had acquired possession of said horses, and had sold them.

"This respondent further says that in what he has done, in the matters stated in said petition and in this cause, he has acted as counsel, in good faith, without any

design of committing a contempt of, or offering any disrespect to, this court.

"This respondent, therefore, prays to be hence dismissed.

"DWIGHT C. REXFORD."

It does not appear from the record before us that upon the filing of these answers any order was made or entered causing interrogatories to be filed as required by section 7275 of Howell's Statutes. But an adjournment was had for one, as appears, not by any order of the court, but from a colloquy between the court and Mr. Rexford. On December 2, 1889, the court proceeded, in a summary way, to examine witnesses, in which Judge Brevoort and Mr. Douglas took turns in the examination. When William H. Dinnee, the first witness, was sworn, Mr. Rexford objected, for the reason that the matter had been before the court, and a hearing had upon it, and they were there at that time simply to get the court's decision, and he therefore objected to any further testimony being offered; that they had not received any notice that any testimony would be taken, and were not prepared to meet any further facts to be introduced by witnesses. These witnesses were examined chiefly as to the particular time, and by whom, the horses were taken from Dinnee's stable, and at the close of the testimony the following occurred:

"*Mr. Frazer.* Now, if your honor pleases, we have three other witnesses we can prove the same fact about the time they went away. Two witnesses were present when the horses were taken.

"*Court.* I do not see that it makes any difference. I will let it stand over until morning. I cannot see what difference it makes. Mr. Frazer, have you anything to say, or Mr. Rexford, why sentence should not be passed?"

Mr. Rexford then addressed the court at some length. Mr. Frazer objected to arguing the case after it had been decided. The record proceeds as follows:

" *Court.* There are several paragraphs under which the court is permitted, I presume, to sentence or fine, or imprison, as the court thinks best, under the circumstances. I assure you, gentlemen, this is one of the most unpleasant duties I ever performed in my life, and I regret, under the circumstances, I am obliged to perform it, but I do not know how I can do otherwise, under the circumstances. I adjudge the defendants, all except Kenyon, the receiver, guilty of contempt of this court. I order that the animals be returned to the defendants' representatives, Douglas, Bowen & Whiting, within 48 hours from the entry of an order to-morrow morning at half past 9 o'clock. I will impose a fine of $50 apiece, and in default of the non-payment of the fine, and of the non-return of the property, that the defendants stand committed to the county jail, in the county of Wayne, for the period of 60 days. I will also fix a bond of $2,500 on appeal to the Supreme Court."

On the day following, the formal order was entered, as follows:

" *The Circuit Court for the County of Wayne. In Chancery.*

" At a session of said court held on the 3d day of December, 1889.

" Present, Honorable HENRY N. BREVOORT, Circuit Judge.

" BURDETTE G. LATIMER
        v.
" NATHANIEL L. BARMORE
   and F. H. HILL Co.

" This court having heretofore, and on the 20th day of November, 1889, by its order, duly entered in this cause, ordered that Burdette G. Latimer, Girard O. Kenyon, Dwight C. Rexford, and Sebilla Closs show cause why they should not be punished as for contempt for disobeying the previous order of this court, and of unlawfully interfering with the proceedings in this cause;—

" And said Burdette G. Latimer, Girard O. Kenyon, Dwight C. Rexford, and Sebilla Closs having filed their several answers to said order to show cause; and this matter having now come up for hearing before the court, and, after hearing the sworn statements of the said Burdette G. Latimer and Dwight C. Rexford, and also

other testimony in this matter, upon due consideration thereof, and after argument by counsel,—it is ordered, first, that said Dwight C. Rexford, Burdette G. Latimer, and Sebilla Closs are, and the same are hereby adjudged to be, guilty of contempt in unlawfully interfering with the proceedings in this cause, and disobeying the lawful order of this court herein, as follows:

" The said Burdette G. Latimer, in unlawfully interfering with the possession of the receiver in this cause of the horses set forth in the bill of complaint, and of secretly and unlawfully taking said horses from the possession of said receiver, and refusing to return the same to him on demand; the said Dwight C. Rexford, for unlawfully interfering with the proceedings in this cause in counseling, advising, and directing the said Burdette G. Latimer to remove and take said horses from the possession of said receiver, and refusing to return the same to him, by which said conduct he is guilty of willful violation of his duty as an attorney of this court; and the said Sebilla Closs, for unlawfully interfering with the proceedings in this cause in receiving said horses from said Burdette G. Latimer, and unlawfully refusing to deliver up the same to the receiver herein on demand.

" And it is further ordered that said Burdette G. Latimer, Dwight C. Rexford, and Sebillâ Closs return, or cause to be returned, within forty-eight hours from the time of entering this order, to the defendants in this cause, or to their representatives, Bowen, Douglas & Whiting, the horses set forth in the bill of complaint in this cause, and that said Burdette G. Latimer, Dwight C. Rexford, and Sebilla Closs, each, within said time, pay to the register of this court a fine of fifty ($50.00) dollars.

" It is further ordered that in case either of the non-delivery of said horses, or of the non-payment of said several fines, within said forty-eight hours, the said Burdette G. Latimer, Dwight C. Rexford, and Sebilla Closs, each and every of them, be committed to the county jail, in the county of Wayne, Michigan, for the period of sixty days.

" HENRY N. BREEVOORT,<br>" Circuit Judge."

These proceedings cannot be sustained. They appear to have been taken under chapter 256 of Howell's Stat-

utes, which provides for proceedings as for contempts to enforce civil remedies, and to protect the rights of parties in civil actions. The papers are entitled in a civil action, and are based upon the petition of S. T. Douglas, on behalf of F. H. Hill Company, in which the grievance set forth was the refusal of the receiver to deliver the immediate possession of the horses to the attorneys of F. H. Hill Company, made on November 14; .the subsequent demand made upon the receiver after the order made on November 18 dissolving the injunction, and directing the receiver to deliver the horses to the agent or representatives, and his informing them that the horses had been stolen or taken from the stables, and his refusal to bring replevin for such horses; and stating that by such disobedience of the receiver of said order of the court *its* right, as the possessor and owner of said property, has been seriously affected. It must be observed that at this time the only order of record in the cause was that of November 13, by which the injunction was dissolved, the appointment of Kenyon as receiver was set aside and held for naught, and ordering him to return said horses and other property free and clear of any expenses or charges for taking or keeping.

The petitioner was not in a position to invoke the provisions of chapter 256 for redress. It was a foreign corporation, and no process had been served upon it, and it had not voluntarily appeared in the suit. It had not submitted itself to the jurisdiction of the court, and until it had it could not ask for any relief at the hands of the court. It was not in a situation to initiate proceedings as for contempt to enforce a civil remedy. As was held in the case of *Langdon v. Wayne Circuit Judges*, 76 Mich. 358, the provisions of chapter 256 show that proceedings as for a contempt may be prosecuted although no party

be aggrieved by the misconduct for which the attachment issued, and, like proceedings for criminal contempts, may be instituted by the court upon its own motion, without the intervention of the party to the pending suit. But when the proceedings are instituted to enforce a civil remedy it can only be done by a party to the suit in which the remedy is sought. The court may, upon its own motion, or upon motion of a party who has submitted himself to the jurisdiction of the court, institute proceedings to punish a person as for a contempt who has disobeyed any lawful order of the court. But this is not such a case. The basis of the whole proceedings is the petition of a non-resident corporation which has not appeared in the suit, and which seeks to enforce a civil remedy by invoking the summary process of contempt proceedings. This is sufficient to dispose of the case.

There are irregularities in the proceedings which would call for a reversal of the final order if the court had acquired jurisdiction by a lawful petition. There were no interrogatories filed as required by section 7275, How. Stat. The parties proceeded against had a right to produce their witnesses, and the court should have allowed them an opportunity to do so.

Sebilla Closs was not shown by the *ex parte* affidavits and proofs to have been guilty of any contempt. Her answer fully exonerated her. What testimony there was to connect Closs & Son with the horses was directed against George Closs, one of the members of that firm. Why he was not proceeded against, and Sebilla was, is inexplicable.

There is no authority for ordering imprisonment for 60 days instead of only until the fine is paid or the act performed. Sections 7279, 7280.

The order adjudging the parties guilty of contempt,

and inflicting punishment, must be reversed, set aside, and held for naught. They are entitled to recover their costs of this Court against F. H. Hill Company.

The other Justices concurred.