## IN RE DUNBAR.

THE STATE OF NORTH DAKOTA, Plaintiff, v. ED. E. DUFEK and James R. Smith, Defendants, HARRY B. DUNBAR, Appellant.

(193 N. W. 928.)

**Intoxicating liquors — law authorizing peace officer to seize intoxicating liquors unlawfully transported subjects seized liquors to control of court.**

1. Chapter 97 of the Session Laws of 1921, which makes it the duty of a peace officer to seize intoxicating liquors being transported in violation of law and which requires such officer to proceed against the person arrested and authorizes the court, upon conviction of such person, to order the liquor destroyed, is construed and *held* to subject seized liquors to the control of the court having authority to order destruction.

**Intoxicating liquors — court under whose control seized liquors held by peace officer has jurisdiction to require him to account for it.**

2. The court under whose control seized liquors are held by a peace officer has jurisdiction to inquire concerning the liquors and to require the person in possession to account for the same.

**Intoxicating liquors — order for destruction signed by judge of another district does not preclude inquiry by court under whose control liquor held.**

3. A peace officer has not the right to remove seized liquors without the consent of the court in which a prosecution is pending, and an order for destruction signed by a judge of another district does not preclude inquiry by the court under whose control liquor is held.

**Intoxicating liquors — one in possession of seized liquors must respond to orders of court on peril of contempt.**

4. One having possession of seized liquors and who is under obligation to account to the court therefor, must respond to the orders of the court at the peril of being held guilty of contempt.

**Witnesses — constitutional privilege of refraining from answering incriminating questions does not purge one of contempt in failure to render account ordered by court.**

5. Reliance upon the constitutional privilege of refraining from answering incriminating questions does not purge one of a contempt consisting in the failure to render an account ordered by the court having jurisdiction.

**Contempt — original affidavit and facts alleged in citation as to nonappearance of seized liquor held sufficient to support judgment for contempt.**

6. Where an order to show cause is issued on an affidavit which alleges facts making it proper for the court to institute an inquiry as to the disposition of seized liquors but which does not purport to allege any contempt, and where, in response to the order to show cause, the party to whom it is directed does not personally appear and does not in other respects comply with the order, and where the court issues a second order to show cause reciting therein the additional negative facts with respect to the nonappearance and the failure to file a sufficient inventory and account, directing the defendant to show cause why he should not be punished for contempt, it is held that the original affidavit, together with the recital of facts in the second order to show cause, is a sufficient pleading to support a judgment of conviction for contempt.

**Contempt — judgment held void.**

7. The judgment in the instant case is examined and *held* not to be in conformity with § 8181, Comp. Laws 1913 which prescribes the procedure requisite to a legal conviction of contempt committed in the immediate view and presence of the court, in that there was no order stating the facts which constituted the offense and reciting that the same occurred in the immediate view and presence of the court.

**Contempt — law requiring court or judge to cause interrogatories to be filed specifying circumstances of offense charged, mandatory.**

8. Section 8188 Comp. Laws 1913, which requires the court or judge before whom an accused is produced by virtue of a warrant or an order to show cause, to cause interrogatories to be filed specifying the facts and circumstances of the offense charged against the accused, is mandatory.

Opinion filed December 30, 1922.　Rehearing denied May 21, 1923.

Contempt, 13 C. J. § 89 p. 65 n. 85; § 104 p. 73 n. 29; § 121 p. 81 n. 55; Intoxicating Liquors, 33 C. J. § 397 p. 689 n. 25, 26, 27, 28; Witnesses, 40 Cyc. p. 2540 n. 39 New.

Appeal from the District Court of Stutsman County, *Nuessle,* J. Reversed and remanded.

*Jacobson & Murray,* for appellant.

Section 8188 requires that unless the accused admits the offense charged, written interrogatories must be filed, specifying facts and circumstances of the offense, to which the accused must make written answers. No such interrogatories were made or filed in the case at bar, or any written answers made thereto by the party proceeded against for contempt. The filing of such interrogatories is mandatory, and is a jurisdictional prerequisite for a judgment for contempt, when it is not charged that the contempt was had in the presence of the court. There is no claim here, in the case at bar, that contempt was committed in the presence of the court. Noble Twp. v. Wasen (N. D.) 86 N. W. 742.

The facts relied upon as constituting the offense of contempt of court may be few or many, and they may be submitted in one or in many affidavits; but the plainest principles of justice demand that the defendant should, before interposing his defense, be confronted with an accusation setting forth concisely the facts and circumstances constituting the offense charged. This rule is sustained by a great preponderance of authority, and this court has expressly recognized it in the case of State v. Root, 5 N. D. 487, 67 N. W. 590; Nichols v. State, 129 Pac. 673; State v. Harris, 14 N. D. 501; State v. Root (N. D.) 67 N. W. 590; Freeman v. Huron (S. D.) 66 N. W. 928; Mitchell v. San Francisco (Cal. Super. Ct.) 125 Pac. 1061; State v. Sweetland (S. D.) 54 N. W. 415.

Defects in the affidavit cannot be cured by proof on the hearing. See Crowley v. Superior Ct. (Cal.) 110 Pac. 817.

"Where, however, as in the case at bar, the fact of the commission of the offense is not within the personal observation of the judicial officer presiding over the court, it becomes necessary to bring the facts before the court by a formal accusation." State v. Henthron (Kan.) 26 Pac. 937; State v. Anders, 68 Pac. 668; Herald Republican Pub. Co. v. Lewis, 129 Pac. 624.

"Where, however, as in the case at bar, the fact of the commission of the offense is not within the personal observation of the judicial officer presiding over the court, it becomes necessary to bring the facts before

the court by a formal accusation. This is done at common law and under the statute by an affidavit. Where this course is pursued the affidavit at once assumes great importance as it is not only the foundation for issuing the order to show cause, but also constitutes—and this is its most important office—the accusation upon which the accused is to be tried for a criminal offense. Under the modern authorities at least, the sufficiency of such accusation is to be tested by the rules governing the framing of indictments and informations, all the material facts and essential ingredients of the offense, are required to be set out by distinct and positive averments; nor can any essential allegation be supplied by implication." State v. Newton, 16 N. D. 151, 112 N. W. 52.

Louis G. Tellner, Russell D. Chase, State's Attorney, Geo. F. Shafer, Attorney General, and R. J. Kamplin, Assistant Attorney General, for respondent.

In some jurisdictions there are holdings to the effect that certain contempts, though not committed in the presence of the court, are necessarily within the knowledge of the court, and may be initiated by the court on its own motion. Among these are scurrilous articles in the newspapers reflecting on the dignity of the court. 2 L.R.A.(N.S.) 231, note.

"The cases which hold to the contrary entirely ignore the distinction between civil contempts, where the court cannot proceed unless so moved by some party aggrieved, and criminal contempts, where only the maintenance of the court's dignity is involved. In the latter class of cases it is primarily the duty of the court itself to see that it is not brought into public contempt by words or conduct of individuals. It is not bound to wait for some third person to initiate proceedings, for it would be anomalous to say that the first duty rests with the court, and yet it must wait for some individual to institute proceedings before the court can take any steps to maintain its own dignity. . . ." 2 L.R.A.(N.S.) 233; Carl v. State, 102 Ark. 122, 143 S. W. 909; State v. Rott, 4 N. D. 487; State v. Crum, 7 N. D. 299.

Negative acts may also constitute a direct contempt as for instance the failing to produce a prisoner at the trial or hearing. 6 R. C. L. 491.

"The failure of Sternes to produce the body of Ah Fong, as the court found he had the power to do, before the court in obedience to the writ, was a contempt committed in the face of the court, and no affidavit of

the facts constituting the contempt was necessary to give the court knowledge thereof. Re Robb, 64 Cal. 431, 1 Pac. 881. An order to show cause or notice of a motion for an attachment would not have served Sternes any useful purpose. He had an opportunity, as shown by the judgment, to explain the circumstances of his failure to obey the writ, and the court was not in duty bound to accept as true his return to the writ." Ex parte Sternes, 77 Cal. 156, 19 Pac. 275.

"Whenever any person shall be committed for a contempt under the provisions of this act, the substance of his offense shall be set forth in the order or warrant of commitment." Ex parte Chastain, 127 S. W. 973; Davies v. State, 84 S. W. 633; Easton v. State, 39 Ala. 551, 87 Am. Dec. 49.

"Another principle seems to be equally well settled, to wit: that a judgment or sentence for contempt is valid without any recital of the conduct or facts which constitute the contempt." Ex parte Summers, 5 Ired. 149; State v. Woodfin, 5 Ired. 199.

## Statement.

BIRDZELL, Ch. J. This is an appeal from a judgment of conviction of contempt against Harry B. Dunbar. On or about May 5, 1921, the appellant herein (Dunbar) who was chief inspector of the state licensing department and a peace officer of the state, captured from the defendants in the above-entitled criminal action and one M. J. Madden, in Stutsman county, a Cadillac automobile loaded with whisky. The capture and the arrest of the defendants were accomplished after overcoming resistance, a gun fight taking place, in which Madden, the owner of the car was killed. The remaining defendants were held to answer for the offense and admitted to bail. The action was on the calendar for the December 1921 term of the court, and when the state's attorney moved the arraignment of the defendants they failed to appear; whereupon the court declared the bonds forfeited and directed the issuance of bench warrants. Of the whisky captured approximately two cases were left with the sheriff of Stutsman county, Dunbar retaining the remainder and the automobile. Prior to the convening of the December term of the district court of Stutsman county, and on or about November 17th, Dunbar, or an attorney purporting to represent him,

attempted to secure from the Honorable J. A. Coffey, district judge of the fourth judicial district (embracing Stutsman county), and who was at the time holding court at Washburn, the county seat of McLean county in said district, an order for the destruction of the liquor. Closely following the refusal of Judge Coffey to make the order, an unverified application for such an order was made to Honorable John C. Lowe, a district judge of the fifth judicial district, who granted the application. The application for the order of destruction alleges that the liquors belonged to and were the property of Madden, the deceased; "that subsequently to the seizure of said liquors, and for the purpose of protecting and preserving the same, applicant removed all of the same to the county of Ward in the fifth judicial district of the state of North Dakota, with the exception of two cases of whisky which applicant deposited with the sheriff of Stutsman county, North Dakota, where the same now is."

It further alleges that the other parties who were riding in the automobile were arrested and were being prosecuted in the district court of Stutsman county, and that the prosecutions were then pending; that the liquors were at the time of the application within the jurisdiction of the court in the fifth judicial district and, upon information and belief, that no other court had jurisdiction thereof. The only circumstance recited or alleged in the petition, showing any necessity for the destruction of the liquor is as follows:

"That applicant is about to retire from office and it would be quite expensive to transport said liquor back to Stutsman county, or to Burleigh county, and that the best interests of the state would be subserved by destroying the same here in Ward county."

By order dated November 19, 1921, signed by the Honorable John C. Lowe, judge, Dunbar was directed to destroy the liquors in Ward county, and by a return dated the 21st day of November, he certified that the order had been executed. On April 22, 1922, by an order filed April 25, 1922, in the office of the clerk of the district court of Stutsman county, the report of destruction was confirmed nunc pro tunc as of November 21, 1921.

While these proceedings (except the nunc pro tunc order) were taking place outside of the district court of Stutsman county, the case of State v. Dufek and Smith had not been disposed of, nor reached for

disposition. It was placed upon the calendar for the December term of the district court of Stutsman county, and when reached for trial the defendants were not present. Their bail was forfeited and bench warrants issued. By affidavit dated December 31, 1921, the state's attorney of Stutsman county informed the court of the taking of the whisky and the automobile from Stutsman county by the said Dunbar; that he had relinquished the office of chief inspector of the state licensing department; that by reason of the wrongful taking and removal of the whisky it was not available as evidence in the criminal action; that the court has been and was impeded and hampered in making a lawful disposition of the whisky; and that Dunbar had thereby impeded and hampered the function of the court and the officers thereof. Wherefore affiant, the state's attorney, prayed and moved the court for an order requiring Dunbar to deliver forthwith into the possession and custody of the sheriff of Stutsman county, the automobile and whisky, and required him to make and prepare in writing, under oath, a full, true, and correct inventory and accounting of said automobile and whisky and file the same with the court. Upon this affidavit an order to show cause was issued reciting, among other things, that the proper functioning of the court in said criminal matter was being impeded and hampered by the failure and neglect of Dunbar to deliver said automobile and liquor into the possession and custody of the sheriff in the jurisdiction of the court. It was ordered that Dunbar show cause on March 10th why he should not be required to deliver the property to the sheriff of Stutsman county. Also "ordered that the said H. B. Dunbar forthwith make and file with the clerk of this court a full, true, and correct inventory and accounting, under oath, of said automobile and said liquor," and that he present himself in person on March 10th for report and examination in reference to the said matters. Upon the return of this order Dunbar did not appear in person, but he did appear by attorney, who stated his position as follows:

"Now, if the court please, our position amounts to this, that there is no authority in law for this kind of a proceeding. There is no civil action pending against the party who is ordered to show cause. There is no summons or complaint issued, either issued or served on him, so we take it from that that there is no provisional remedy that could lie because there would be no foundation for it, namely a plenary action.

We cannot make it stick from a criminal standpoint because there is no criminal proceeding pending against the party required to show cause; no complaint was ever filed with a magistrate charging him with any crime and no warrant issued. There is nothing in the Volstead Act which would give the court jurisdiction of authority in this special proceeding, and there is nothing in the act which appoints—under which Dunbar is inspector which would authorize this proceeding. I will briefly call the court's attention to it. . . . Now as to the act appointing him inspector; I presume, if your Honor is familiar with it, I won't need to take your time to read it. It makes him a peace officer. Furthermore it appears from his affidavit that he is not now pool hall inspector—I mean license inspector. He has been discharged, so he is an ordinary citizen. He is not a de facto officer or a de jure officer. I take this position, that there is a great question whether he can be brought in and examined. I take the position that there must be a proceeding in court of a plenary nature, either civil action or a criminal action. Mr. Dunbar is not subpœnaed to come in to testify on matters which are material to an information which is filed. He is ordered to come in and testify generally. No subpœna has been issued. I can't conceive of any statute or any law which would authorize this kind of a proceeding unless we say the court's inherent powers. Now, if the court has inherent power to order Mr. Dunbar then the court would have inherent power to order any citizen of North Dakota in."

At the conclusion of this hearing the court continued the matter for two weeks. In the interim a second order to show cause was issued reciting, among other things, the nonappearance of Dunbar personally, as directed by the previous order; that no reason or excuse was presented for his failure to appear and submit himself to examination as required. Also, that it further appeared to the court that the purported return to the previous order was not a sufficient compliance therewith. Whereupon it was ordered that Dunbar appear on the 24th of March and show cause why he should not be held and adjudged in contempt of court on account of this failure to comply with the requirements of the previous order. Upon the adjourned hearing of the original order to show cause and upon the return of the second order, returns were filed, showing reliance upon the order of destruction made by the district judge of Ward county as above indicated, and stating "that the liquor

and property described in the order to show cause herein is the identical liquor and property designated and described in said certified copy." (Certified copy of the order of destruction.) In addition, it pleaded the action of the Ward county district court as res judicata.

The state's attorney was granted permission to examine Dunbar; whereupon his counsel stated:

"The said H. B. Dunbar refuses to testify or to be sworn on the grounds and for the reasons that the answers to the questions propounded might have a tendency to incriminate him, and the said H. B. Dunbar claims the constitutional privilege, both under the Federal and the state Constitutions, and the attorney for Mr. Dunbar states, that he has interviewed the said Dunbar with reference to the matter and upon the facts given, advised the said H. B. Dunbar to claim the privilege of immunity from testifying both under the state and Federal Constitutions."

Dunbar took the stand and was advised of his constitutional rights by the court. He refused to answer any question having the remotest bearing upon the disposition of the liquor. Another witness testified to the application being made to Judge Coffey at Washburn on or about November 17th. At the conclusion of the hearing, the court entered the following judgment:

"Now, on this 25th day of April, 1922, came into court H. B. Dunbar, pursuant to an order to show cause dated March 10, 1922, in the within entitled matter, directed to the said H. B. Dunbar, requiring and ordering him to be and appear before this court at the court room thereof, in the courthouse, in the city of Jamestown, in said county of Stutsman, and state of North Dakota, on the 24th day of March, A. D. 1922, at 2 o'clock in the afternoon of said day, or as soon thereafter as counsel could be heard, and then and there show cause, if any there be, why he should not be held and adjudged in contempt of this court on account of his failure to comply with the requirements of a certain order of this court in the within entitled matter dated February 27, 1922, and why he should not be punished for said contempt; the time for hearing said order to show cause dated March 10, 1922, having been postponed and continued on the application of said H. B. Dunbar from the 24th day of March 1922, to the 25th day of April, 1922; the said H. B. Dunbar appearing on this 25th day of April, 1922, in person

and by J. K. Murray of Mott, North Dakota, his attorney, and the state of North Dakota appearing by Louis G. Tellner, state's attorney, and F. G. Kneeland, assistant state's attorney; and it appearing to the court that the said H. B. Dunbar has failed to produce in this court, or deliver into the possession and custody of the sheriff of Stutsman county, that certain intoxicating liquor which was seized by him on or about the 5th day of May, 1921, in Stutsman county, said intoxicating liquor being that certain liquor referred to in the aforesaid order dated February 27, 1922, he being required so to do by the said last-mentioned order; and it further appearing to the court that the said H. B. Dunbar has failed to make a proper showing to this court, on account of his failure to produce said liquor in this court, or to deliver same into the possession and custody of the sheriff of Stutsman county and has failed to file with the clerk of this court an inventory of said liquor, as required by said last-mentioned order; now therefore, upon all the proceedings had in this matter and all the files and records herein, it is the order and judgment of this court that the said H. B. Dunbar is in contempt of this court by reason of his failure to comply with the orders of this court, or to offer a reasonable excuse for his failure to so do, and that by reason thereof, and on account of such contempt, it is hereby ordered and adjudged that the said H. B. Dunbar be, and he is, ordered committed to the county jail within and for the county of Stutsman and state of North Dakota, on account of such contempt and as a punishment therefor, for a period of thirty days, beginning at 12 o'clock noon of this day, and that he stand committed until this order is complied with."

This judgment is stayed on appeal.

BIRDZELL, Ch. J. (after stating the facts). Section 9 of the Prohibition Law in force at the time of the seizure of the liquor in question (Sess. Laws 1921, chap. 97) makes it the duty of any peace officer to seize any and all intoxicating liquors found in any automobile or other conveyance when any person is discovered in the act of transporting it in violation of law. The officer is further required to proceed at once against the person arrested in any court having competent jurisdiction, and the court upon conviction of the person so arrested is

required to order the liquor destroyed and the property used in the transportation of the same forfeited. The state's attorney of the county in which the property was seized is required to cause summons to be issued against all persons having any right, title, or interest in the property seized, particularly describing the property and stating that the same is held for forfeiture and sale under the provisions of the act. If no answer is filed and no claim made therefor, the court is directed to declare the forfeiture of the property to the state and order sale of the same in the manner provided for the sale of property on execution, and if answer is filed or claim made, the court is required to hear and determine the claims according to law. The statute is entirely silent as to what shall be done with the liquors seized pending the prosecution, but it is sufficiently definite in its requirement of prompt proceedings in a court of competent jurisdiction to afford a clear indication of what is to be done with seized liquors. It is also sufficiently definite in its provision vesting authority in the court to order the liquor destroyed to indicate that the liquor, at all times subsequent to seizure, is, in reality, in legal custody under the direction of the court. The plain purpose of the statute obviously could not be carried out if the court having ultimate authority to order destruction should not have the authority to require preservation or conservation of the liquors in the meantime. Furthermore, the fact that seized liquors usually constitute the most reliable evidence of the violation of the law would naturally subject it to the exercise of the inherent judicial power of preservation, even in the absence of authority for its destruction being expressly vested. Hence, we do not question the power of a court in which a prosecution is pending to inquire concerning the whereabouts of seized liquors, for the transportation of which in violation of law persons are held to trial. We think these observations are a sufficient answer to the contention of the appellant that the court is powerless to inquire of a peace officer or an ex peace officer in the absence of a plenary action pending. There is, in fact, a criminal prosecution pending and there is a duty devolving upon the peace officer who seized liquor to hold it subject to the lawful orders of the court, and if the peace officer has ceased to function as such, by reason of resignation or otherwise, he is still under duty to account to the court having ultimate authority over the property in question.

The appellant contends that the judgment in question is invalid for

the reason that it is insufficient, considered as a conviction of direct contempt, in that it does not contain the requisite finding; and that, considered as a conviction of constructive or indirect contempt, it is invalid by reason of the failure upon the hearing to comply with the requirement of § 8188 regarding interrogatories.

The argument for its insufficiency as a judgment on a direct contempt is that § 8181, Comp. Laws, 1913, requires an order to be made, stating the facts which constitute the offense and reciting that the same occurred in the immediate view and presence of the court, and specifically prescribing the punishment to be inflicted therefor. The only part of the judgment or order which may be thought to show a compliance with this statute is the following:

"And it appearing to the court that the said H. B. Dunbar has failed to produce in this court, or deliver into the possession and custody of the sheriff of Stutsman county, that certain intoxicating liquor which was seized by him on or about the 5th day of May, 1921, in Stutsman county, said intoxicating liquor being that certain liquor referred to in the aforesaid order dated February 27, 1922, he being required so to do by the said last-mentioned order and it further appearing to the court that the said H. B. Dunbar has failed to make the proper showing to this court on account of his failure to produce said liquor in this court, or to deliver same into the possession and custody of the sheriff of Stutsman county and has failed to file with the clerk of this court an inventory of said liquor, as required by said last-mentioned order; now therefore, upon all the proceedings had in this matter and all the files and records herein, it is the order and judgment of this court that the said H. B. Dunbar is in contempt of this court by reason of his failure to comply with the orders of this court, or to offer a reasonable excuse for his failure to so do."

It will be noted that for the most part this order or judgment, in its findings of fact, finds in the alternative that Dunbar has failed to produce the liquor in court or to deliver it into the possession and custody of the sheriff of Stutsman county. So it was not his failure to produce the liquor in court that constituted a contemptuous act or omission, for the alternative or additional finding can only mean that this failure would have been excused had he delivered it into the possession and custody of the sheriff, an act which obviously would have taken place

outside of the presence of the court. The only finding that is not thus qualified or placed in the alternative is that he has failed to file an inventory with the clerk as required by the order of February 27, 1922. We are of the opinion that this is not a statement of a fact which constitutes the offense of direct contempt and a recital that it occurred in the immediate view and presence of the court, such as is required by § 8181, Comp. Laws, 1913. In fact, the judgment does not appear to have been drawn in conformity with § 8181 as a judgment of conviction of direct contempt and it cannot stand as a judgment of conviction of such offense. See Re Mettler, 50 Mont. 299, 146 Pac. 747; State ex rel. Rankin v. District Ct. 58 Mont. 276, 191 Pac. 772.

Is the omission of interrogatories fatal? The language of the statute is mandatory. It says that when the accused is produced on the return of an order to show cause (§ 8181) "the court or judge must, unless the accused admits the offense charged, cause interrogatories to be filed, specifying the facts and circumstances of the offense charged against him. The accused must make written answer thereto under oath within such reasonable time as the court or judge allows therefor and either party may produce affidavits or other proofs contradicting or corroborating any answer. Upon the original affidavits, the answer and subsequent proofs the court or judge must determine whether the accused has committed the offense charged."

The importance of interrogatories in contempt proceedings of this character has been recognized from a very early time. At common law, if the answers of the accused cleared him the complaint was dismissed. 4 Bl. Com. 288. But this effect is not any longer generally given or conceded. On the contrary, the court is required to determine, as a matter of fact, whether a contempt has been committed. Such at least is the better view, United States v. Shipp, 203 U. S. 563, 51 L. ed. 319, 27 Sup. Ct. Rep. 165, 8 Ann. Cas. 265, and our statute expressly requires it. Notwithstanding this, however, interrogatories still appear to be mandatory. Noble Twp. v. Aasen, 10 N. D. 264, 86 N. W. 742; Latimer v. Barmore, 81 Mich. 592, 46 N. W. 1; Metheany v. Kent Circuit Judge, 142 Mich. 628, 106 N. W. 147; 13 C. J. 73; Rapalje, Contempt, § 122.

We are not prepared to say that this procedural requirement is not a wholesome one. It has a tendency, necessarily, of making the charge

upon which one is to be convicted or acquitted definite and specific. While the defendant answered in the instant case, we cannot hold that the pleadings take the place of interrogatories, particularly in view of the fact that his counsel commented on the absence of interrogatories on the return day, construing their absence as an indication that his client was not being prosecuted for indirect contempt.

The defects above pointed out are fatal to the judgment in the instant case. It is not sufficient that the record upon appeal shall show that a contempt has, in fact, been committed, but it is essential that the record shall show that the defendant has been duly convicted of a specific contempt, and that if it be a direct contempt, that the order or judgment shall contain the requisite findings of fact, or if it be an indirect contempt, that the anterior procedure prerequisite to such a judgment shall have been had in order that it shall appear that no valuable right of the party accused may have been denied him. See State v. Root, 5 N. D. 487, 57 Am. St. Rep. 568, 67 N. W. 590.

In view of the subsequent proceedings incident to the reversal of the judgment in this case, we are called upon to consider some of the additional questions presented by counsel. As previously intimated in this opinion, we construe the prohibitory statute as placing seized liquors under the control of the court in which prosecutions for the offense of transportation may be pending. The officer seizing the liquor, being required promptly to institute the prosecution, holds it thenceforth as an agent of the court and subject to the ultimate power of the court to make a legal disposition thereof. As such agent he may not assert a right to do acts likely to embarrass the court in which prosecutions are pending, either in the matter of the presentation of evidence, or in the matter of making final judicial disposition of the conveyances or of the contraband goods seized. On the contrary he may be called upon to account at any time for the property so left in his hands. A peace officer has no right, without the consent of the court in which the prosecution may be pending, to remove large quantities of the contraband goods for safe keeping or otherwise to a remote place in the state. If he might thus remove a portion of the whisky, the sheriff, with equal right, might remove the remainder and leave the prosecutor without evidence. Neither has he the right, consistent with the duty he owes to the court,

whose agent he is, to go in quest of a judge who might look with more favor than another upon an application for destruction.

Furthermore, when such peace officer is called to account for his disposition of the property seized, or is called upon to turn the property over to the sheriff of the county in which the prosecution may be pending, his failure to do so is disobedience of a lawful order of the court, and this constitutes a criminal contempt under § 8178, Comp. Laws, 1913. He may not escape the consequences of such a contempt by asserting his constitutional privilege to refrain from answering questions concerning the disposition of the liquor on the ground that his answers might tend to incriminate him. He may, if he choose, so refrain from answering questions and thus give no evidence that might be used against him upon a charge of embezzlement, perjury or the like, but nevertheless his wilful failure to account to the court having a right to demand an account when ordered so to do would constitute a criminal contempt. One cannot escape the consequences of a contempt of this character by asserting that he cannot perform an official or fiduciary duty without divulging matters that might subject him to criminal prosecution. The constitutional right to refrain from giving incriminating testimony is not a license to commit contempt.

The appellant contends that all proceedings looking towards the prosecution for contempt are invalid for the reason that they were not initiated by affidavit. It is pointed out that the original affidavit, upon which the first order to show cause was issued, did not allege any facts purporting to amount to a contempt of court, and that, as no subsequent affidavit was filed purporting to allege any contempt, all subsequent proceedings are vitally defective. While it is true that the state's attorney, in the first affidavit, was not instituting contempt proceedings, it does not follow, in our opinion, that this affidavit, together with the facts that were within the personal knowledge of the court, and which were relied upon as the basis of the second order to show cause and recited in it, did not constitute a sufficient foundation for the order and a sufficient pleading. The office of the affidavit is simply to allege facts for the information of the party against whom an order is prayed and to call the court's attention to facts of which it may not be aware. It required no affidavit to inform the court that Dunbar did not appear personally in response to the first order to show cause, or that he did not

49 N. D.—55.

present a sufficient inventory and account or make a sufficient return to the order served upon him, and the recitation of the additional facts in the second order was as efficacious to apprise Dunbar of the nature of the complaint against him as any affidavit would have been. We are of the opinion that the original affidavit, together with the recitation of facts in the second order to show cause, facts which were within the personal knowledge of the court, is a sufficient foundation for the second order to show cause. Together they constitute a pleading sufficient to support a judgment of conviction for contempt. They apprised Dunbar of the facts that were responsible for his being brought before the court and that he would be expected to respond to a contempt charge on account thereof. In our opinion there is no merit in this contention of the appellant.

Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.

CHRISTIANSON, J., concurs.

ROBINSON, J., concurs in result.

BRONSON, J. (concurring specially). I concur in the reversal of the judgment. I express no opinion concerning matters that may affect subsequent proceedings incident to such reversal.

GRACE, J., concurs.

## On rehearing.

PER CURIAM. A rehearing has been had in this case. The court adheres to the opinion previously rendered. In accordance with that opinion, further proceedings may be had as follows:

(1) Upon the filing of interrogatories, an inquiry may be conducted to determine whether or not the appellant herein was guilty of contempt in his failure to comply with the first order to show cause in the manner recited in the second order. In determining this question, the court need not consider the order of destruction nor the proceedings in Ward county as being a full or a sufficient accounting for the liquor.

(2) The failure or refusal to render a proper accounting in open court, in conformity with the requirements of the district court before whom the further proceedings are had, may be deemed a direct contempt and a judgment of conviction based thereon.

BIRDZELL and CHRISTIANSON, JJ., and PUGH and BURR, Dist. JJ., concur.

Justices GRACE and ROBINSON having been succeeded in office by Justices NUESSLE and JOHNSON, both of whom were disqualified, Honorable A. G. BURR, Judge of the Second Judicial District, and Honorable Thos. H. PUGH, Judge of the Sixth Judicial District, sat in their stead on the rehearing.

BRONSON, Ch. J., (specially concurring upon rehearing). I concur in the disposition of this cause as heretofore made and in the language contained in paragraphs one and two of the per curiam opinion upon rehearing.