**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Arthur W. STOKES, Defendant and Appellant.**

**Civ. No. 9199.**

Supreme Court of North Dakota.

April 5, 1976.

Charles J. Gilje, States Atty., Jamestown, for plaintiff and appellee.

Johnson, Milloy, Johnson & Stokes, Wahpeton, for defendant and appellant; argued by Rauleigh D. Robinson, Wahpeton, and A. Warren Stokes, pro se.

PEDERSON, Judge.

Arthur W. Stokes, a lawyer licensed to practice law in the State of North Dakota, represented one Gordon James Johnson in municipal court in Jamestown on a charge of driving a motor vehicle while under the influence of intoxicating liquor. Johnson was found guilty and an appeal was taken to the district court. Thereafter, the appeal was shifted to the Stutsman County Court With Increased Jurisdiction by stipulation and order of the district court.

The trial de novo to a county court jury was set for 9 a. m. on July 28, 1975, in

Jamestown. At about 8:30 or 8:45 a. m. on that date, Stokes called the prosecutor, Georgia Pope, from his office in Wahpeton and informed her that he was not able to locate Johnson and that the court could consider the matter in default.

Stating summarily that he was satisfied that the contempt offense had been committed, the county judge issued an order to show cause why Stokes should not be punished for "civil contempt not committed in the presence of the court." A hearing thereon was had on September 12, 1975, at which a number of witnesses, including Stokes, testified.

On October 1 the judge issued a "Judgment and Order In Re: Contempt," in which he reaffirmed his conclusion that Stokes had committed a contempt and ordered Stokes to appear on October 15 at 11 a. m. for fixing of a penalty. The judge specifically found Stokes in contempt for (1) his failure to inform the court of his lack of contact with his client, (2) his willful failure to appear with an explanation of his client's absence to the court and jury, and (3) his absence at the time of trial; all of which he felt obstructed justice and diminished the integrity of the court in the eyes of the jurors. At the proper time and place Stokes appeared, was afforded the opportunity to make a statement, and was thereupon ordered to and did pay $150.00 to Stutsman County.

More than sixty days later, on December 23, 1975, Stokes prepared a notice of appeal which he filed on December 29. Stokes has taken no other steps to prosecute his appeal; however, in the absence of any communication from him, the clerk of the county court, on February 9, 1976, properly certified the records and files constituting the judgment roll to the Supreme Court as required by Rule 11(b), N.D.R.App.P.

The Stutsman County state's attorney then moved that this court dismiss Stokes' appeal on the grounds that:

(1) Stokes has failed to appeal within sixty days as required by Rule 4(a), N.D.R.App.P.

(2) Stokes has failed to cause timely transmission of the record on appeal under Rules 10(b), 11(a), and 12(c), N.D.R.App.P.

The motion is supported by the affidavit of the judge who heard the matter and the certificate of the clerk.

■ Stokes argues that because Rule 4(a), N.D.R.App.P., is inconsistent with § 28–27–04, NDCC, Rule 4 must be disregarded, and that, therefore, an appeal taken within ninety days is timely. The order of the Supreme Court adopting the North Dakota Rules of Appellate Procedure states that rules and statutes pertaining to appellate procedure are superseded. Rule 49(b) specifically provides that all conflicting statutes are superseded. Finally, § 27–02–09, NDCC, provides that statutes relating to pleadings, practice, and procedure shall have force and effect as rules until amended or otherwise altered by Supreme Court rules. We conclude that Stokes' argument that we must disregard Rule 4(a) because of its inconsistency with § 28–27–04 is wholly without merit. Rule 4(a), N.D.R.App.P., supersedes § 28–27–04, NDCC.

■ Stokes also argues that since the record does not show that he was ever served with notice of entry of judgment, pursuant to Rule 36, N.D.R.App.P., the sixty-day period under Rule 4(a), N.D.R.App.P., within which to appeal, has never started running.

Rule 4(a), N.D.R.App.P., provides in part:

"(a) Appeals in civil cases. In a civil case the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within sixty days of the date of the service of notice of entry of the judgment or order appealed from."

The state's attorney argues that Stokes had actual notice of the judgment by virtue of his appearance for fixing of penalty under the judgment. He cites *Dobler v. Malloy,* 190 N.W.2d 46 (N.D.1971), *Klaudt v. Klaudt,* 156 N.W.2d 72 (N.D.1968), and *Gunsch v. Boehler,* 91 N.W.2d 343 (N.D. 1958), as supporting his position that the

sixty-day period began to run when Stokes made this appearance for fixing of the penalty. All these cases, however, can be distinguished from the present situation. *Dobler* only says that the notice of entry of judgment may be waived and an appeal taken before the notice is served. In *Klaudt* the appellant served on the appellee a notice of motion to vacate the judgment, which evidenced her acknowledgment of entry of the judgment. This affirmative action is distinguishable from the passive appearance for sentencing as in the present case. In *Gunsch* the appeal was not taken until 457 days after the judgment was entered, a considerably longer period than in this case where the appeal was filed only 69 days after the fixing of the penalty.

■ It is inconsistent for the appellee to complain of noncompliance with Rule 4(a) when he himself has not complied with the rule by serving a notice of entry of judgment. The rules, when applicable, apply equally to both parties.

The crux of the problem in this case, however, does not lie in the compliance with Rule 4 but rather in the concept and classification of contempt itself.

■ Classification of contempts has plagued the legal profession for centuries. The most common classifications are "criminal contempt" or "civil contempt." Both criminal and civil contempt can be "direct" and punishable summarily, or "indirect" and punishable only after a due process hearing. Generally, a civil contempt cannot be distinguished from a criminal contempt by an examination of the conduct which is considered contumacious. The classification has been said to be more correctly dependent upon the purpose for and the type of sanctions imposed, making it necessary to make the classification in retrospect. See *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), and *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

■ If the purpose for the sanction is to coerce someone into performing a certain act, primarily for another party's benefit, the contempt should be labeled a civil contempt. If the contemptuous act has been concluded and the only purpose for the sanction is to punish the offender and vindicate judicial authority, the contempt should be labeled a criminal contempt. See the *Shillitani* primary purpose test—*Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Under this test it would have been more appropriate for the court to have labeled the charge in this case as a "criminal contempt" rather than a "civil contempt," as the court's purpose was punitive rather than coercive.

Many acts of contemptuous conduct and the sanction imposed contain elements of both civil and criminal contempt. Some courts, accordingly, avoid pigeonholing contempts into any classification, as either civil or criminal, no matter how clearly the facts seem to indicate one of those traditional categories. What one court will call a civil contempt, another will call a criminal contempt.

■ We have examined numerous contempt cases from this jurisdiction and others, as well as annotations and legal writings, and are led to the conclusion that neither the label nor the sanction imposed can be used to determine such things as appealability or reviewability. The common law rule that no review was possible of a judgment in a contempt proceeding was too harsh, and has been supplanted by courts permitting writs of certiorari, habeas corpus, mandamus, prohibition, and, in some cases, even reviews by supervisory writs or by the exercise of general supervisory powers over lower courts. Court rules, statutory enactments, as well as case law, have some bearing upon the procedural aspects of, the nature of, and time for, review of contempt judgments. See Rule 42, N.D.R. Crim.P.; Chapters 12.1–10 and 27–10, NDCC; 43 N.D.L.Rev. 237; 56 Cornell L.Rev. 183; Utah L.Rev. 1972, 306; 64 J.Crim.L.C. & P.S. 300 (1973); Annotations in 97 A.L.R.2d 431; 33 A.L.R.3d 448 and 589; 4 Am.Jur.2d Appeal and Error, §§ 168–171; 17 Am.Jur.2d Contempt; 17 C.J.S. Contempt §§ 5(1)(2) and 6.

A contempt judgment or order is appealable in North Dakota by virtue of the provisions of § 28–27–02, NDCC. The question then becomes: Is the contempt judgment or order to be classified civil or criminal for the purpose of the application of the North Dakota Rules of Civil Procedure, the North Dakota Rules of Criminal Procedure, and the North Dakota Rules of Appellate Procedure? If the trial court, correctly or incorrectly, labels a contempt order "criminal," does Rule 4(b), N.D.R.App.P., prohibit review unless the appeal is taken within ten days? Or if the trial court refuses to label it either criminal or civil, does Rule 4(a), N.D.R.App.P., automatically allow sixty days for an appeal? The mere asking of such questions indicates the impropriety of "yes" or "no" answers.

The contempt proceeding is a tool of the judicial system, useful in delivering justice. Its use should not result in overkill, but rather it should be used only to the extent necessary to accomplish the court's purpose. Summary criminal contempt may be required in certain circumstances[1] and proper constitutional protection must be afforded. In the absence of a rule specifically relating to contempt we apply Rule 4(a), N.D.R.App.P., which allows appeals within sixty days from the time of service of notice of entry of the judgment or order.

The state's attorney also argues that the appeal should be dismissed because of Stokes' failure to cause timely transmission of the record under Rules 10(b), 11(a), and 12(c), N.D.R.App.P. Although it is true that Stokes should have informed the State that he was not sending a transcript of the proceedings with the record, we feel it is his position that is more subject to damage by the transcript's absence since he has the burden on appeal. If Stokes wishes to rely only upon the motion and affidavits that we have before us, we will hear the appeal on that record unless the State makes timely application for transmittal of additional parts of the record.

Motion denied.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.

---

1. See ABA Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge, Section 7, Approved Draft 1972.