STATE of North Dakota, Plaintiff and Appellee,

v.

Arthur W. STOKES, Defendant and Appellant.

Civ. No. 9199.

Supreme Court of North Dakota.

June 23, 1976.

Johnson, Milloy, Johnson & Stokes, Rauleigh D. Robinson, Wahpeton, for appellant.

Charles J. Gilje, State's Atty., Jamestown, for appellee.

PEDERSON, Justice.

Arthur W. Stokes was counsel for Gordon James Johnson, who was convicted of driving while under the influence of intoxicating liquor in municipal court in Jamestown. An appeal was taken to the district court and, thereafter, by stipulation of counsel and order of the district judge, the appeal was shifted to the Stutsman County Court With Increased Jurisdiction. The matter was set for trial de novo to a county court jury for 9 a. m. on July 28, 1975. At 8:30 or 8:45 a. m. on the 28th of July, Stokes informed the Assistant City Attorney, Georgia Pope, by telephone from his office in Wahpeton, that he was not able to locate his client and that the court should consider the matter in default.[1]

After a hearing, the judge issued a "Judgment and Order In Re: Contempt," in which he held that Stokes had committed a contempt and ordered him to appear for fixing of a penalty. The judge specifically found that Stokes had obstructed justice and diminished the integrity of the court in the eyes of the jurors. Stokes was afforded the opportunity to make a statement, and was ordered to and did pay $150 as partial costs of the jury to Stutsman County. It is from this order that Stokes appeals.

Stutsman County moved to dismiss the appeal and we dealt with that issue in *State v. Stokes,* 240 N.W.2d 867 (N.D.1976). Additional details appear therein.

---

1. Although not involving contempt, except to reject that as a remedy, for an interesting recent case with many features comparable to this one, see *United States v. Ross,* 535 F.2d 346 (6th Cir. 1976).

██ We first consider Stokes' contention that his acts did not constitute civil contempt. The North Dakota Legislature has defined acts punishable as civil contempts in § 27–10–03, NDCC, as follows:

"Every court of record of this state may punish as for a civil contempt any person guilty of a neglect or violation of a duty or other misconduct by which a right or remedy of a party to a civil action or proceeding pending in such court may be defeated, impaired, impeded, or prejudiced in the following cases:

"1. An attorney, clerk, sheriff, coroner, or other person duly elected or appointed to perform a judicial or ministerial service for a misbehavior in his office or trust, or for a willful neglect or violation of duty therein, or for disobedience to any lawful order or process of the court or of the judge thereof;

* * * "

When Stokes and his client failed to appear for trial on July 28, the court should have summarily affirmed the conviction. The State was not defeated, impaired, impeded, or prejudiced in the case.[2] We do not agree that Stokes should have been found guilty of civil contempt under this statute.

As we noted in the previous *Stokes* opinion, *supra,* we do not believe that the charge should have been labeled civil contempt. As we stated:

"The classification has been said to be more correctly dependent upon the purpose for and the type of sanctions imposed, making it necessary to make the classification in retrospect. See *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), and *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

"If the purpose for the sanction is to coerce someone into performing a certain act, primarily for another party's benefit,

the contempt should be labeled a civil contempt. If the contemptuous act has been concluded and the only purpose for the sanction is to punish the offender and vindicate judicial authority, the contempt should be labeled a criminal contempt. See the *Shillitani* primary purpose test— *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Under this test it would have been more appropriate for the court to have labeled the charge in this case as a 'criminal contempt' rather than a 'civil contempt,' as the court's purpose was punitive rather than coercive." *State v. Stokes,* 240 N.W.2d 870, *supra.*

The North Dakota Legislature has set out what constitutes statutory criminal contempt in § 12.1–10–01, NDCC. Because Stokes was not charged with criminal contempt under this statute, there is no purpose in analyzing the charge within the guidelines of this statute.

The trial judge stated that, in his judgment: "Mr. Stokes' absence at the time of trial, is, by itself, sufficient to find him in contempt, 97 A.L.R.2d 438." This annotation indicates that, under certain circumstances, absence of an attorney at the time of trial can be an obstruction of justice. As we indicated above, justice was not obstructed in this case by the failure to appear.

██ In addition to statutory powers of contempt granted to the courts of this State by §§ 27–10–03 and 12.1–10–01, NDCC, the courts have historically retained an "inherent" power to punish for contempt. See *LePera v. Snider,* 240 N.W.2d 862 (N.D. 1976). This court has defined the limits of this inherent power in *Murphy v. Townley,* 67 N.D. 560, 274 N.W. 857, 861 (1937), where we stated:

"The inherent power of the court to punish for contempt is exercised to pre-

---

**2.** Section 33–12–41, NDCC, states that: " * * if the defendant fails to appear in the district court when his presence is required, the judgment of the justice shall be affirmed summarily and entered as the judgment of the district court and carried into effect as such." By the

provisions of Section 40–18–19, NDCC, this is made applicable to appeals from municipal courts. It is apparent that the Legislature anticipated the absence of an appellant and provided that summary affirmance of the conviction shall be the remedy for this situation.

vent the obstruction of the course of justice, to prevent prejudice to the trial of any action or proceeding then pending in court. The court is created for the administration of justice through matters coming before it, and anything which interferes with or obstructs the work of the court is within the inherent power of the court to punish. But this power is not to be extended by the court beyond this field."

The trial judge found that Stokes had a duty to inform the court of his lack of communication with his client and, if Stokes had so informed the court, a continuance could have been arranged before the jury was called and the court would not have been embarrassed by the non-appearance.

We do not condone the actions taken by Stokes in this matter. He should have communicated with the trial judge, and not relied only on the prosecuting attorney to explain the situation. We do not condone his lack of communication with his client nor his failure to make the appearance without his client. An attorney's first duty is as an officer of the court and he should always aid in facilitating the judicial process. We do, however, realize that clients are not always as cooperative and dependable as they should be. Stokes' client was a "last minute" type of individual and could be expected to show up in his attorney's office at the last minute. Stokes should have suspected, also, that his client might not appear at all. These matters should have been communicated to the judge.

We do not agree that Stokes' neglect warrants conviction of contempt and assessment of a $150 penalty. Although a warning, censure, and requirement to apologize were justified, as we said in the previous Stokes' opinion at 240 N.W.2d 867, at 871, contempt powers should be used only to the extent necessary to accomplish the court's purpose.

Reversed as to the conviction of a contempt, and remanded so that an appropriate warning may be issued, a censure imposed,

and an apology in writing obtained. No costs shall be allowed to either party.

ERICKSTAD, C. J., and PAULSON, VOGEL and SAND, JJ., concur.