Duane BYE and Marjorie Bye,
Plaintiffs and Appellees,

v.

Roger N. ELVICK and Roger N. Elvick
1978 Trust, John Doe, Trustee,
Defendants and Appellants.

Civ. No. 10290.

Supreme Court of North Dakota.

June 24, 1983.

Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for plaintiffs and appellees; argued by Ronald McLean, Fargo.

Mabley, Manske & Wall, Roseville, Minn., and Stefanson, Landberg & Alm, Moorhead, Minn., for defendants and appellants Roger N. Elvick and Roger N. Elvick 1978 Trust; argued by Frank Mabley, Roseville, Minn.

Williamson, Bains, Moore & Hansen, Minneapolis, Minn., and Van Osdel, Foss & Miller, Fargo, for Roger N. Elvick 1978 Trust.

PEDERSON, Justice.

## MOTION TO DISMISS APPEAL

Before we reveal the facts in this case and consider the substance of the appeal, we must first consider the motion by the Byes to dismiss the appeal because of Elvick's alleged failure to comply with the North Dakota Rules of Appellate Procedure.

The trial of this action consumed twenty days and involved a difficult and confusing factual situation which presented complex legal issues. The action was tried without a jury. In its eighty-six findings of fact and thirteen conclusions of law, the court found in favor of the Byes and awarded them $304,338.60 for money it determined Elvick owed to them. Elvick filed a notice of appeal from the judgment, but because he could not pay for a full transcript, he ordered a partial transcript of the proceedings be transmitted to this court. The Byes objected to an appeal based upon a partial transcript and refused to stipulate as to which portions of the record were necessary. The Byes maintain that Elvick violated Rule 10(b), NDRAppP by failing to transmit a full and complete transcript and seek dismissal of the appeal.

Our initial consideration is whether the appellant must transmit a full and complete transcript of the proceedings if the parties cannot stipulate as to which portions of the transcript are necessary for our review. Rule 10(b), NDRAppP provides, in pertinent part, that:

"If an appeal is taken in a case in which any evidentiary hearing was held, it is

the duty of the appellant to order a transcript of the proceedings. . . . The order must be served on the reporter and must be for a complete transcript of the proceedings, unless a stipulation is obtained from all affected parties specifying portions which are not required for the purposes of the appeal. If a party affected by the appeal unreasonably refuses to stipulate to exclude from the transcript portions of the record not necessary to the resolution of issues raised by the appellant, the party proposing the stipulation may apply to the trial court for an order requiring the refusing party to pay for the unnecessary portions of the transcript and reasonable attorney's fees for making the application."

The appellate rules concerning the record on appeal were changed substantially in 1978. Prior to 1978, Rule 10(b) provided, in part, that:

"If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, he shall include in the record a transcript of all evidence relevant to such finding or conclusion."

This court interpreted the original version of Rule 10(b) as placing the burden of furnishing a suitable record on appeal upon the appellant. *In Interest of R.H.,* 262 N.W.2d 719, 721 (N.D.1978); *Starr v. Morsette,* 236 N.W.2d 183, 186 (N.D.1975); *State ex rel. Olson v. Nelson,* 222 N.W.2d 383, 387 (N.D. 1974). See also 9 Moore's Federal Practice ¶ 210.05[1] (2d ed. 1948). We also noted that the appellant's position is "more subject to damage by the transcript's absence since he has the burden on appeal. If . . . [the appellant] wishes to rely only upon the motion and affidavits that we have before us, we will hear the appeal on that record unless the . . . [appellee] makes timely application for transmittal of additional parts of the record." *State v. Stokes,* 240 N.W.2d 867, 871 (N.D.1976).

Thus, Rule 10(b) allowed the appellant to proceed on less than a full transcript even though the appellee objected. The appellee who objected to a partial transcript "should provide any additional parts of the transcript that he believes necessary." *State ex rel. Olson, supra,* 222 N.W.2d at 387. In those appeals where the record did not allow for a meaningful and intelligent review of the error alleged to have occurred in the lower court, we held that the appellants "have not borne the burden of proof of showing error" and declined review of the issue. *Starr v. Morsette, supra,* 236 N.W.2d at 186.

Since Rule 10(b), NDRAppP was changed in 1978, the issue now under consideration has not been before this court. We must therefore determine the proper construction and application of Rule 10(b), NDRAppP.

Rule 10(b) is derived from Rule 3.03 of the Kansas Rules of the Supreme Court. Rule 3.03 provides, in part, that:

"When an appeal is taken in a case in which any evidentiary hearing was held, it shall be the duty of the appellant to order a transcript. . . . The order shall be served on the reporter and all parties and shall be for a complete transcript of any such hearing, unless there be obtained a stipulation of all affected parties specifying portions which are not required for the purposes of the appeal. . . ."

Rule 3.03 has no provision detailing the procedure to be followed should one party unreasonably refuse to stipulate to a partial transcript as does Rule 10(b), NDRAppP.

The Supreme Court of Kansas has considered Rule 3.03 on one occasion. In *State v. Cuezze,* 225 Kan. 274, 589 P.2d 626 (1979), the appellant, the State of Kansas, argued that a transcript of the evidentiary proceedings was not required because the appeal involved "purely questions of law." 225 Kan. at 282, 589 P.2d at 633. Two of the defendants-appellees insisted that a full transcript was required. After numerous motions before the Supreme Court of Kansas, the parties were ordered to agree upon which portions of the record were required and, if no agreement could be reached, the appellant was directed to order a complete transcript. The court reserved the question of assessing costs of the transcript until a

final determination of the appeal. When the parties could not stipulate as to which portions of the record were required, the entire transcript was transmitted. The court, in assessing costs, noted that:

"[I]t is obvious that the major portion of the transcript was unnecessary and much of it could have been avoided if the parties had stipulated as to the portions actually necessary as contemplated by our rule 3.03. Under the circumstances, the costs of the transcript are assessed one-half to appellant and one-half to appellees ...." *Id.*

The Supreme Court of Kansas thus interpreted Rule 3.03 as requiring a complete transcript on appeal unless the parties can stipulate otherwise.

■ *State v. Cuezze,* however, is distinguishable from the instant case in one important aspect. The appellant in *Cuezze* did not claim that it was unable to pay for a complete transcript as in the case at bar. If we were to remand this case for a complete transcript and reserve the question of assessing costs, Elvick still could not pay for a full transcript in advance. His right to appeal would in effect be extinguished by the reporter's refusal to prepare the transcript without advance payment. Rule 10(c), NDRAppP. Our rules of construction militate against such "absurd" results. *State v. Jelliff,* 251 N.W.2d 1, 7 (N.D.1977).

■ Securing an adequate basis for allowing meaningful and intelligent appellate review underlies the procedural requirements of Rule 10, NDRAppP. Rules 10(f) and (g), NDRAppP, further illustrate that there are occasions where the absence of a complete transcript is specifically provided for. See *Durham v. Jones,* 698 F.2d 1179, 1180 (11th Cir.1983). We conclude that Elvick may proceed upon a partial transcript without violating Rule 10(b), NDRAppP.[1] We note, however, that unless the record on appeal allows for a meaningful and intelligent review of the alleged error, we will decline review of the issue.

## FACTS [2]

Duane Bye has farmed in North Dakota for over 30 years. Bye also operated a "custom combine business" that contracted with farmers to harvest their crops. When Bye decided to retire from farming, Roger Elvick contacted him and expressed interest in purchasing Bye's combining equipment.

Elvick, another potential purchaser, Marvin Arlien, and Bye soon began to negotiate the sale of Bye's equipment. Elvick and Arlien tried unsuccessfully to obtain their own financing for the purchase. The parties eventually agreed that Elvick and Arlien would be able to purchase the equipment only with Bye's help. The three formed a corporation called "Custom Farm Services, Inc." (CFS). Bye believed that he would be involved in the corporation for one year, until Elvick and Arlien could take over financially.

Bye then sold his combining equipment to Muscatell Leasing of Fargo, North Dakota. Muscatell agreed to lease the equipment back to CFS for approximately $74,000. per year. The lease called for semi-annual payments and required a $50,000.00 down payment from CFS. Bye, Elvick and Arlien personally guaranteed the lease. Each CFS investor, Elvick, Arlien, and Bye, contributed $17,000.00 toward the down payment. Neither Bye nor Elvick needed a loan to finance the investment. Arlien, however, borrowed the money from a bank in Sheyenne, North Dakota and signed two promissory notes, each for $8,500.00. Elvick guar-

---

1. This court has encountered several cases where the appellant failed to order any transcript of the proceedings as required by Rule 10(b), NDRAppP. See *Sanford v. Sanden,* 333 N.W.2d 429 (N.D.1983); *City of Wahpeton v. Skoog,* 295 N.W.2d 313 (N.D.1980). In those instances we noted that a transcript of the trial proceeding was necessary to accomplish our review on appeal. *City of Wahpeton, supra,* at 315.

2. Without a complete transcript and with no agreed statement of facts, we are compelled to search through briefs and scattered pages from a partial transcript furnished by appellant, from oral arguments of counsel, as well as from the extensive findings prepared by the trial court in order to prepare a statement of facts for this case.

anteed one note and Bye guaranteed the other. To purchase supplemental equipment CFS required, the parties borrowed additional funds from the bank in Sheyenne. Bye and Elvick personally guaranteed these notes.

The corporation was not a financial success and when the initial lease payment was due, the parties were forced to sign another promissory note. Bye personally guaranteed the note. CFS eventually borrowed over $49,000 that Elvick and Bye personally guaranteed.

After one year, Elvick approached Bye and asked to purchase Bye's stock in CFS. Elvick apparently assured Bye that he would assume responsibility for CFS's various promissory notes. By this time, Arlien had disappeared and had defaulted on his loans with the Sheyenne bank. Thus, when Bye transferred his interest in CFS, Elvick gained sole control of the corporation.

On the same day that Bye transferred his interest to Elvick, another lease payment was due. CFS lacked the necessary funds for the lease payment. Because Bye was the guarantor on the lease, he and Elvick decided to borrow the $35,000.00 lease payment. The bank agreed to loan each $18,-000.00 if Bye would personally guarantee Elvick's promissory note. Bye once again guaranteed Elvick's note.

After Elvick purchased Bye's interest in CFS, Bye sought to be released as the guarantor on the Muscatell lease. Muscatell refused to do so and Bye remained the guarantor.

Bye had no contact with CFS or Elvick until a former customer of Bye's contacted him. Bye was told that CFS equipment had been abandoned in Kansas. With the equipment abandoned and standing idle, the corporation's financial problems mounted.

Bye alone was to bear financial responsibility for the Muscatell lease. As the guarantor on the lease, Bye eventually made two additional lease payments. When Bye confronted Elvick about the debts, Elvick promised to sell his 2,050-acre farm that was held in trust and reimburse Bye for the CFS debts. Elvick, Bye, and Muscatell also agreed to liquidate the combining equipment and use the sale proceeds to satisfy future lease payments.

Elvick's attempts to sell his farm were futile because the land was leased to another farmer for ten years. Bye realized that if he purchased a part of Elvick's farm, Elvick could use the proceeds to satisfy some of the debts Elvick owed.

Bye and Elvick then entered into a complex purchase agreement that was further complicated by a series of confusing negotiations. Bye and Elvick initially agreed that Bye would purchase 800 acres of the farm. Elvick would pay Bye $142,500.00 out of the proceeds for the debts that Bye had incurred on behalf of CFS. The agreement also provided that each party was to pay half of all future payments on the Muscatell lease. Elvick apparently was to remain liable on the debts that he had incurred.

Because Elvick's farm was held in trust, the trustee had to approve the sale. The trustee, however, objected to a "piecemeal" sale of the land and refused to approve the sale. Bye reluctantly agreed to purchase the entire farm subject to an existing mortgage held by the Federal Land Bank.

The closing on the farm sale was delayed for various reasons and Elvick's financial condition steadily worsened. Elvick was unable to secure a loan that he desperately needed. Fearing that Elvick would declare bankruptcy which might, in turn, jeopardize the land sale, Bye guaranteed another promissory note on Elvick's behalf.

Prior to the closing, Bye paid several CFS expenses and for the first time was short of funds. Bye and Elvick agreed that Elvick would secure an $8,000.00 loan guaranteed by Bye. The money was to reimburse Bye for paying CFS's expenses.

Approximately four months after the parties first negotiated the purchase agreement, the parties met to close the sale. The Byes obtained a first mortgage with Federal Land Bank for $730,000. Bye also executed a second mortgage to Elvick for $288,500. The parties agreed that Bye would execute an unsecured promissory note in Elvick's favor to cover the difference between the mortgages and the pur-

chase price. Elvick had agreed that both the second mortgage and the promissory note would be interest free.

At the closing, however, Elvick insisted that the second mortgage and promissory note bear an interest of 9%. After some discussion the parties eventually agreed to interest of 6½%. Because the interest would have increased the purchase price substantially, the purchase price was reduced.

At the time of the closing, the parties calculated the difference between the two mortgages and purchase price to be $50,000.00. Accordingly, Bye executed a promissory note to Elvick for $50,000.00. Elvick later discovered that the difference was actually $59,500.00, rather than $50,000.00. Bye and Elvick agreed that Bye, upon notifying Bye of the error, would execute a note for $59,500.00. Elvick was to return the $50,000.00 note at a later meeting.

Elvick, however, failed to attend the meeting. Elvick also placed the bulk of the money he received as a result of the sale in a "spendthrift" trust that he had established on the date of the sale. Elvick made no effort to pay Bye or to pay any of his debts. Moreover, Elvick's trustee made several poor investments and the corpus of the trust was reduced substantially. Bye commenced this action and sought payment for all debts he had incurred on behalf of CFS. Elvick argued that the parties had orally agreed that all debts would be settled upon sale of the land and that he owed Bye nothing.

After a trial to the court, Bye was awarded the amounts that he had paid on behalf of CFS and Elvick. The court voided the $50,000.00 promissory note originally executed in Elvick's favor. Finally, the court found that the conveyance of the land sale proceeds to the spendthrift trust was fraudulent and void.

## DISPOSITION ON THE MERITS

Elvick appeals from the judgment, claiming that the parol evidence rule "compels acceptance of both [the $50,000.00 and $59,-500.00 notes] and bars any modification of these unconditional promises to pay based on oral testimony from Bye." Elvick also argues that the parol evidence rule prohibits its consideration by the trial court and this court of the oral testimony offered to determine the parties' intentions concerning debt resolution at the land closing. Elvick contends that the findings of fact based upon inadmissible parol evidence are clearly erroneous.

█ At the outset we note that a review of those portions of the transcript provided for the appeal indicates that Elvick failed to object to oral testimony concerning the notes.[3] Failure to impose a proper and timely objection to oral testimony under the parol evidence rule, however, is not a waiver of the right to challenge the evidence on appeal. *Gajewski v. Bratcher,* 221 N.W.2d 614, 630 (N.D.1974).

█ Without question, the accounts given by Elvick, Bye, and the other witnesses regarding the intentions of the parties concerning the land sale transaction constitute parol evidence. The parol evidence rule is set forth in § 9–06–06, NDCC and provides that:

"The execution of a contract in writing, whether the law required it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

█ Parol evidence is "inadmissible to vary or contradict the terms of a written contract between the parties to the contract." *Schwarting v. Schwarting,* 310 N.W.2d 738, 739 (N.D.1981) quoting *Dardis v. Eddy Brothers,* 223 N.W.2d 674, 679 (N.D.1974). If, however, an ambiguity exists in the contract, parol evidence is admissible to explain existing essential terms or to show the parties' intent. *Atlas Ready-Mix of Minot v. White Properties,* 306 N.W.2d 212, 220 (N.D.1981). The terms of a contract are ambiguous when the language is subject to more than one construction or "when good arguments can be made for either of two contrary positions as to the

---

**3.** Elvick did object on the basis of the parol evidence rule during testimony about the second mortgage and the farm lease on Elvick's land.

meaning of a term in a document." *Atlas Ready-Mix, supra,* 306 N.W.2d at 220. See also *McDonald v. Antelope Land and Cattle Co.,* 294 N.W.2d 391, 394 (N.D.1980). When you have a mass of documents and conversations which together constitute the agreement, and the parties' intent cannot be clearly ascertained from the written documents alone, "reference must then be made to extrinsic evidence, and those questions in regard to which extrinsic evidence is adduced are questions of fact to be determined by the trier of fact." *Thomas C. Roel Associates, Inc. v. Henrikson,* 295 N.W.2d 136, 137 (N.D.1980).

■ After reviewing the court's findings of fact, conclusions of law, and those portions of the transcript before us, it is impossible to say that the court relied heavily, if at all, upon the disputed testimony in reaching its decision. The court could have relied on evidence that might be found in the parts of the transcript not furnished, which may have implied that Elvick would not be relieved from his existing obligations after the land was transferred to Bye, and which was not objected to. Even if the court had integrated the parol evidence as a part of its reasoning, this court has held that a judgment will not be reversed merely because it rests upon inapplicable reasons. *Damm v. National Insurance Company of America,* 200 N.W.2d 616 (N.D.1972). Furthermore, it appears that Bye did not rely solely upon the disputed parol testimony to persuade the trial court and this court that Elvick would remain obligated for his debts after the land sale.

■ In light of the above discussion, we conclude that the harmless-error rule, Rule 61, NDRCivP, precludes this court from disturbing the judgment of the trial court "in any way if the court did rely on inadmissible parol evidence in reaching its decision." *Robar v. Ellingson,* 301 N.W.2d 653, 659 (N.D.1981). See also *Zimmer v. Bellon,* 153 N.W.2d 757, 763 (N.D.1967) (erroneous admission of parol evidence held not prejudicial under the circumstances of the case). Moreover, even if the parol evidence had been clearly admissible, the fact remains that Elvick and Bye contradicted one another concerning what was decided during their land sale negotiations. When this court reviews oral testimony before the trial court we are governed by Rule 52(a), NDRCivP, and we will not disturb the findings of the trial court unless they are clearly erroneous. *Robar, supra,* 301 N.W.2d at 659. A finding of fact is clearly erroneous when the reviewing court, after considering the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Gross v. Sta-Rite Industries, Inc.,* 322 N.W.2d 679, 682 (N.D.1982). The trial court's findings of fact on appeal are given the same weight as a jury verdict. *Stee v. "L" Monte Industries, Inc.,* 247 N.W.2d 641 (N.D.1976). A finding is not clearly erroneous merely because we might have reached a different result had we tried the case. *Anderson v. Mooney,* 279 N.W.2d 423 (N.D. 1979). We conclude that any findings of the trial court which could be linked to the parol evidence are not clearly erroneous.

Accordingly, the judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, SAND and PAULSON, JJ., concur.